INDEPENDENT LIFE INSURANCE COMPANY, PLAINTIFF IN ERROR, *v.* PAUL V. HUNTER, DEFENDANT IN ERROR.

(*Knoxville,* September Term, 1933.)

Opinion filed October 21, 1933.

FINLAY & CAMPBELL and JAMES A. NEWMAN, for plaintiff in error.

WHITAKER & WHITAKER, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a libel suit in which the plaintiff below obtained a judgment for $25,000. A *remittitur* of $10,000 was suggested by the trial judge and judgment entered for $15,000. Defendant below took the case to the Court of Appeals and that court reversed the judgment and dismissed the suit. We granted the petition for *certiorari* filed on behalf of plaintiff Hunter.

The suit was based on a communication written by the president of the Independent Life Insurance Company to Honorable A. S. Caldwell, at that time (September 4, 1930) Commissioner of Insurance of the State of Tennessee. This communication contained charges against three former employes of the insurance company. We quote the relevant portions of the letter:

"C. E. Rodgers of Chattanooga took things into his own hands and collected his money before a final had been made against him and before we had sufficient time to check up and see how much he is short, but it will be slight, but we understand that he is going to work for the Federal Union of Cincinnati, Ohio, and is going to work in Chattanooga.

"Paul Hunter, also of Chattanooga, did practically the same thing. It all happened in about thirty days."

In the concluding paragraph of the letter it was said "we procured licenses for these men and paid for them, and we think probably it will be plenty of time for them to go to work for some other Company when they have a clean bill of health from us."

Rodgers and Hunter both brought suits against the insurance company on account of this communication, alleging that it was libelous *per se*. A number of defenses were interposed by the insurance company but Rodgers and Hunter both recovered judgments. The Rodgers case reached the Court of Appeals first and was dismissed in that court on the ground that the subject-matter of the communication sued upon was absolutely privileged. This court affirmed the judgment of the Court of Appeals in the Rodgers case upon the same ground. When the Hunter case reached the Court of Appeals, that court was of opinion that its decision must be controlled by the Rodgers case and dismissed the Hunter case (this case) on the same ground. In so doing, we think the Court of Appeals erred.

Our views with respect to the former case are set out at some length in *Independent Life Insurance Company* v. *Rodgers*, 165 Tenn., 447. Rodgers had gone to work for the Federal Union Life Insurance Company. He had

procured certificates of authority from the Insurance Commissioner to work for said company. The letter from the president of the Independent Life Insurance Company was intended and taken by the Insurance Commissioner as a charge against Rodgers going to his eligibility to work for the Federal Union Insurance Company.

Our opinion in *Independent Life Insurance Company* v. *Rodgers* showed that, under chapter 46 of the Acts of 1925, Code sections 6138-6140, the Insurance Commissioner was authorized to revoke the license or certificate of authority of any agent upon "good cause shown." That the statute provided for a hearing upon charges made, affording a test of pertinency, and we reached the conclusion that such proceedings before the Insurance Commissioner were proceedings before a tribunal having the attributes of a court and that the statements of parties and witnesses in such proceedings were entitled to the immunity accorded statements of parties and witnesses in a court of justice.

*Independent Life Insurance Company* v. *Rodgers* dealt with charges made in a case which the Insurance Commissioner had jurisdiction to try and a case in which the Insurance Commissioner had authority to take action. The object of the charges there considered was to procure a revocation of the agent's license to work for the Federal Union Insurance Company, and the Insurance Commissioner was expressly empowered to grant this relief.

The case now before us (Hunter's case) is different. Hunter had left the employ of the Independent Life Insurance Company when this letter of the president of that company was written to the Insurance Com-

missioner. He had procured no certificate of authority authorizing him to work for any other company. We are unable, therefore, to see how the Insurance Commissioner can be said to have dealt with Hunter's Case judicially. The charges made against Hunter did not present any matter of which the Insurance Commissioner had jurisdiction.

The testimony of Mr. A. S. Caldwell, Insurance Commissioner at that time, was taken herein. He summarized the provisions of our statute, Code sections 6137-6140, relating to the qualifications of insurance agents, so far as these provisions are material to this inquiry. Mr. Caldwell said:

"A. Well, first he (the agent) is furnished by my department with a questionnaire wherein he is asked for certain information to which he is required by law to make an affidavit; after my office gets back that questionnaire if the information contained therein is satisfactory, then after that before he can do business he has to pay a privilege tax which is required of all agents in the State, that being based on the population of the county in which he is soliciting; then after that he is required, or the company for whom he works, is required to procure a certificate authorizing him to represent that company.

"Q. That does not refer to the agent's license? A. That is the agent's license and then he has to have the other also. In other words, if he pays the privilege tax and did not have the certificate he would not be licensed. We never license a man without he has that certificate. No man can legally do business without paying this privilege tax as well as holding a certificate from some company licensed to do business in the State."

Section 6137 of the Code requires that when the agent procures his license or certificate of authority that such license or certificate shall show that the company for which the agent intends to solicit "has fully complied with all the requirements of this article applicable to such company." It is therefore necessary that the agent's license or certificate shall show for what company he intends to work. This record shows that the license or certificate issued to Hunter only authorized him to serve the Independent Life Insurance Company. Likewise, and as a matter of course, the certificate of authority procured for Hunter by the Independent Life Insurance Company only authorized him to do business for that company.

It necessarily follows that when Hunter left the employ of the Independent Life Insurance Company, he was without authority to transact business for any insurance company. He was not entitled to act as agent for any insurance company until a new license, as the Commissioner calls it, was procured by him, because his old license only permitted him to work for the Independent Life Insurance Company. He could not work for another company, moreover, until that company procured a certificate of authority for him.

This was the situation when the president of the Independent Life Insurance Company addressed his communication of September 4, 1930, to the Insurance Commissioner, upon which this suit is founded. Upon receipt of this communication, the Insurance Commissioner wrote the following letter to Hunter:

"September 16, 1930.

"Mr. Paul V. Hunter,

"Chattanooga, Tenn.

"Dear Sir:

"Re Claim—Independent Life Insurance Company, Nashville, Tenn.

"Complaint has been filed with this department through a representative of the Independent Life Insurance Company of Nashville, Tenn., wherein it is stated that you are indebted to the company for premiums collected and failed to be accounted for, and that you are now placing business with another company.

"I wish to call your attention to the fact that it is not the policy of this department to license or continue to license agents who fail to account for premiums collected.

"We will thank you to kindly let us know your reason for not making adjustment in the above complaint, and unless a satisfactory explanation is made we will be compelled to notify other companies not to accept business from you.

"Yours very truly,

"A. S. CALDWELL, Commissioner."

It was entirely proper for the Commissioner, administering the insurance laws of the State, to write the foregoing letter to Hunter. We cannot agree, however, with the Court of Appeals that this letter can be regarded as the institution, the continuation, or any part of a judicial proceeding. After Hunter left the employ of the Independent Life Insurance Company, in undertaking to write insurance, he was an outlaw so to speak. He had no right to pursue this calling without obtaining further credentials. But the statute provided a different tribunal for dealing with such conduct, to-wit, the criminal court.

"Whoever shall, directly or indirectly, aid in transacting insurance business in any such company, without first receiving such certificate of authority, or having received such certifiate of authority, shall, after receiving from such commissioner notice of the revocation thereof, continue to act as an agent of any such company . . . shall be deemed guilty of a misdemeanor and shall be fined not less than fifty dollars nor more than one hundred dollars." Code section 6137.

We think no formal notice from the Commissioner, under the circumstances of this case, was necessary to bring Hunter within the purview of the statute, if he solicited insurance for another company without obtaining a new license and a new certificate of authority. His first credentials, as heretofore emphasized, only empowered him to work for the Independent Life Insurance Company.

The judicial power of the Insurance Commissioner in the premises was limited by the statute to the issuance and to the revocation of licenses and certificates of authority. He was not empowered to deal with the case of a person undertaking to act as an insurance agent without a license and without a certificate of authority. That was a matter for the criminal courts.

We said in *Independent Life Insurance Company* v. *Rodgers, supra,* that we were by no means inclined to regard as absolutely privileged all proceedings before or by an official "merely because such an arm of the law is to exercise judicial discretion." Following cases cited, we held that the rule of absolute privilege was only applicable when "there is an authorized inquiry which, although not before a court of justice, is before a tribunal which has similar attributes."

The charges here made against Hunter were made to an official not empowered to deal with Hunter's case judicially and the case does not fall under the authority of our recent decision. The letter addressed to the Insurance Commissioner by the president of the Independent Life Insurance Company, insofar as it concerns Hunter, is not entitled to the immunity ascribed to it by the Court of Appeals.

The foregoing observations dispose of this case. True, there was a motion for a directed verdict below, overruled by the trial judge. In the Court of Appeals the action of the lower court in overruling this motion was challenged on several grounds, among others, that no malice was shown, if the letter upon which the suit rested was only conditionally privileged; that the charges made against Hunter were not libelous *per se;* etc., etc.

Errors were also assigned in the Court of Appeals with respect to the charge and with respect to other matters occurring on the trial below. The Court of Appeals, however, considered only the defense of absolute privilege and dismissed the suit on that ground alone. That court did not notice any other point made by the Independent Life Insurance Company and that company has filed no petition for *certiorari* to review the action of the Court of Appeals.

If there is one thing well settled in our practice, it is that no error of the Court of Appeals, either of commission or omission, can be reviewed by this court except upon petition for *certiorari*. The erroneous pretermission of material questions by that court must be brought up in the same way that the erroneous disposition of such points is brought up to permit a review by this court. This follows from the language of the statutes which created the Court of Civil Appeals and the Court of Ap-

peals. Chapter 82 of the Acts of 1907, chapter 100 of the Acts of 1925. Our jurisdiction must be invoked by petition for *certiorari*. *Knight* v. *Cooley,* 131 Tenn., 21; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Brock,* 132 Tenn., 477; *McKay* v. *Railroad,* 133 Tenn., 590; *Taylor* v. *Fire Ins. Co.,* 140 Tenn., 150; *Tri-State Fair* v. *Rowton,* 140 Tenn., 304.

*Tri-State Fair* v. *Rowton, supra,* is controlling on this point of practice. In that case Mrs. Rowton brought suit for damages for personal injuries against the Tri-State Fair, a body corporate. The suit was defended on the theory that the Tri-State Fair was a charitable enterprise, not responsible for the negligence of its employees, and was also defended on the theory that Mrs. Rowton had been guilty of proximate contributory negligence. There was a judgment for Mrs. Rowton below. The Court of Appeals reversed this judgment, holding that the motion for a directed verdict should have been sustained on the ground that the corporation was conducting a charitable undertaking. That court did not consider the question of contributory negligence. Mrs. Rowton filed a petition for *certiorari,* which was granted, and this court held that the Court of Appeals was in error in holding that the Tri-State Fair operated a charitable enterprise. The Tri-State Fair filed no petition for *certiorari* but undertook to rely upon the defense of contributory negligence here. This court said that such defense was not available, in the absence of a petition for *certiorari,* reversed the judgment of the Court of Appeals, and affirmed the judgment of the trial court in favor of the plaintiff.

It follows in this case that the judgment of the Court of Appeals must be reversed and the circuit court affirmed.