BARRETVILLE BANK & TRUST CO. *v.* BOLTON *et al.*

(*Jackson,* April Term, 1944.)

Opinion filed March 3, 1945.

Rehearing denied May 5, 1945.

ALFRED SOHM and L. E. GWINN, both of Memphis, for petitioner-complainant.

WILLIAM A. PERCY and GALLOWAY & GALLOWAY, all of Memphis, for respondent-defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal involves two causes tried in the Chancery Court of Shelby County, Tennessee. The first was terminated by a final consent decree on February 7, 1939, and the second was commenced by the filing of an original bill by the Barretville Bank & Trust Company against Gladys Bolton and her husband, W. O. Bolton, and against James C. Davis, trustee, on May 4, 1942. It is from the action of the chancellor in dismissing the latter bill that this appeal arises. The bill was filed to set aside an alleged fraudulent conveyance by Bolton to his wife, Gladys; to sell the real estate so conveyed, subject to a prior mortgage and rights of homestead; and to satisfy in whole or part, the consent judgment for $2,081.60 held by the bank against Bolton evidenced by the decree of February 7, 1939. Apparently the defendant James W. Davis, trustee, was never served with process, and in any event he never filed an answer and no further steps were taken against him. The defendants, Gladys Bolton and W. O. Bolton,

filed separate answers and later the defendant Gladys Bolton filed an amended answer. The cause was heard on oral proof by agreement.

At the close of complainant's proof, the chancellor held that the conveyance from W. O. Bolton to his wife in March, 1938, was fraudulent and that both husband and wife were guilty of fraud, but he further held that the consent decree of February 7, 1939, was a final release and discharge of the bank's rights against the conveyance and the parties thereto on account thereof and dismissed the bill.

The complainant bank after filing a supplemental bill in the nature of a bill of review, dismissed this pleading on its own motion, and appealed from the chancellor's decree of dismissal.

Holding that this was a broad appeal, the Court of Appeals affirmed the chancellor's decree, not on the ground that the decree of February 7, 1939 was a release and waiver of the bank's rights to set aside the conveyance of March, 1938, but that court repelled the bank on the ground of laches and estoppel, holding that the delay by the bank from the time its officers acquired knowledge of the conveyance April 1, 1938, until the filing of the present bill in May 1942, was unreasonable, and that to afford the bank relief would be against fundamental principles of equity because "the attitude of the bank as reflected by its conduct was such as to reasonably induce Mrs. Bolton to believe that the bank had abandoned its right to attack the conveyance and acquiesced therein."

After this judgment, the bank filed petition for *certiorari,* which we granted, and the case is now before us on numerous assignments of error, which we consider in the course of the opinion.

W. O. Bolton owned a farm of some 50 acres, in Shelby County, where he lived with his wife, Gladys, and carried on farming operations. In 1938 the farm had a value of about $4,900 and was encumbered with mortgages for about 75% of its value. He had done business with the Barretville Bank & Trust Company for a number of years and the farm was near the office of that institution, and several of the bank's officers owned land near the farm of the Boltons. Apparently some years before 1938, Bolton had made a loan at the bank and secured its repayment with a trust deed on the farm, so that the officers of the bank were thoroughly familiar with the value of the land and the improvements on it.

After failing to make an agreement with the bank for another extension of an old debt and future credit for the crop year 1938, Bolton deeded the land to his wife and recorded the deed on March 21, 1938. This conveyance was made subject to several mortgages and apparently the equity was at the time of little value, so that the bank with knowledge of the conveyance, took no steps to set it aside. However, in May, 1942, more than four years after the conveyance by Bolton to his wife, the value of the equity had been greatly increased by reasons of the reduction of the mortgage debt, by extensive improvements on the farm itself, and by reason of the great general appreciation of land value in the neighborhood, on account of the construction of the U. S. Naval Base at Millington and the installation of other war industries in that part of Shelby County. The bank accordingly filed the original bill to set aside the conveyance and subject the equity.

Bearing in mind that the chancellor dismissed the bill at the conclusion of complainant's proof, the case presents many propositions that make it unusual and interesting.

These propositions have been ably briefed and argued by both sides. The first witness for complainant was C. C. Castles. He was president of Complainant Bank, a lawyer of many years experience, and fully informed of real estate values on and about the Bolton farm, since he lived and owned real estate about five miles away, had served as a real estate appraiser for the bank, and the bank at one time had a mortgage on the Bolton farm which had been released in March, 1938.

In that month Castles had a conference with Bolton about his past indebtedness to the bank and the possibility of future credit for the farm year then commencing. In the course of this conference, Bolton told Castles that if the bank sued to collect its debt, that he (Bolton) would deed the property to his wife.

██ The bank had chattel mortgages to secure the Bolton debt, and after the foregoing conference, which was not satisfactory to Castles, the bank filed a bill in the Chancery Court to foreclose the chattel mortgages and sell the security.

Bolton deeded the farm to his wife on March 21, 1938, two days after the filing of the bill, and the deed was recorded the same day. Not only was this constructive notice to the bank, but Castles admits that by April 1st he had actual knowledge of the transfer, but never took the trouble to make even a casual investigation which would have fully disclosed the entire transaction. He expressly admits that the bank was not interested in setting aside the conveyance because the expense involved would have been at the time, more than the amount of the bank's recovery.

From this admission, since Castles is chargeable with full knowledge of values as a real estate expert and with all legal rights and remedies, and since he is an experi-

enced lawyer, the only reasonable and the conclusive inference is that the bank through its president, acquiesced in the conveyance and waived any rights it may have had to set it aside. Being in full charge of the collection of the Bolton debt for the bank, both as president and lawyer, the suggestion that Castles had no authority to waive the bank's rights in the matter, scarcely merits serious consideration.

Since we hold that Castles had full authority to waive the bank's right to set aside the Bolton conveyance even if it was fraudulent, it is unnecessary in this opinion to say whether in a technical sense it was fraudulent or not. Certainly it lacked two elements which have often been held essential. It was neither made in secret nor surreptitiously, nor was it made to the bank's injury or prejudice. According to Castles' testimony, Bolton told him he was going to convey it. Castles knew of the conveyance very soon after it was made, and according to his testimony, the equity conveyed had no value for the bank on account of prior mortgages, and did not justify the expense necessary to set it aside.

Under the peculiar facts of this case, it is not necessary for us to say *for how long* the bank's acquiescence would have had to continue to raise a final bar to a change of mind and the resort to a court of equity to make the change effective. A suit in equity was pending between the parties at the time of the conveyance of the Bolton farm to Bolton's wife. It is true that the suit had for its special purpose the foreclosure and liquidation of certain chattel mortgages, but its general purpose was the satisfaction in whole or part of Bolton's indebtedness to the bank and so an amendment to set aside the alleged fraudulent conveyance and subject the equity, could easily and reasonably have been made.

■ Now bearing in mind that both Bolton and his wife were parties to the cause then pending and that the complainant bank, through its president and attorney, had all necessary knowledge of the conveyance by Bolton to his wife, we come to a consideration of the final consent decree of February 7, 1939, in the light of the knowledge and situation of the parties. We think all the evidence introduced to explain the meaning of the words used in the decree was clearly incompetent since there was no ambiguity patent or latent, and the bank must be held to have fully understood the effect of the decree since the president and lawyer for the bank actually studied, signed and approved it before it was entered.

■ The pertinent parts of the decree are as follows:

"Final Consent Decree

"This cause came on to be heard this day and was heard and by consent of the parties it is agreed that the title and possession of the two mules in question be vested to the Complainant. That the judgment against the defendant W. O. Bolton be credited with the value of said mules, to-wit: the sum of $230.00.

"All the costs in this cause are adjudged against the complainant bank including the cost of the receivership and the difference between these costs and the sum of $230.00 which is the agreed value of the said two (2) mules is to be credited to the judgment against the said W. O. Bolton. This decree settles and determines every claim of every kind and character which the said complainant has or may have against the said defendants.

. . .

. . . . . . .

"It is agreed that consent judgment in the amount of $2081.60 against W. O. Bolton be had by complainant.

"Upon consideration of which, by consent of the parties herein it is accordingly as above set out Ordered, Adjudged, and Decreed.

"L. D. Bejach, Chancellor."

The English language as we know it, affords no broader formula for release and discharge than that employed in the consent decree, where the following language is used:

"This decree settles and determines every claim of every kind and character which the said complainant has or may have against the said defendants."

No exceptions to this language are expressed or implied in other parts of the decree except that a money judgment is taken against Bolton in an agreed amount. A claim is "a demand of a right or supposed right; a calling on another for something due or supposed to be due; *an assertion of a right* or fact." Webster's New International Dictionary.

The argument that the right which the bank had to set aside the fraudulent conveyance was not a "claim" is made the more untenable by consideration of the matters admitted to have been intended by the use of the word "claim". They were the ownership of two mules and an accounting for the sale of certain bales of cotton. These are no different as "assertions of rights" by the parties than would have been an "assertion of right" or "claim" by the bank to set aside the conveyance as fraudulent. A fair construction of the language of the decree includes all three.

A consent decree is a contract made final and binding upon the parties by the approval of the court (*Boyce* v. *Stanton*, 83 Tenn. 346), and need not be confined strictly to the subject matter and issues presented in the pleadings if the court has jurisdiction. *Bigley* v. *Watson*, 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679; *Boyce*

v. *Stanton, supra*; *Johnston* v. *Osment*, 108 Tenn. 32, 36, 65 S. W. 23. From the all-inclusive language employed in the decree, it is unreasonable and not to be inferred that the bank was at the time of the entry of the decree, reserving any accrued rights against either of the defendants Bolton, except the judgment for $2,081.60 against W. O. Bolton set out in the decree. Indeed, the only fair inference to be drawn from complainant's evidence is that the bank had lost all interest in the farm as a possible means of securing repayment of its debt, and since Gladys Bolton was entirely discharged by the use of the word "defendants" in that part of the decree which contained the release, that the bank looked only to W. O. Bolton for payment of the "money judgment" taken against him, out of his future earnings and acquisitions.

We have no doubt from Mr. Castles' testimony that in order to effect a compromise of the lawsuit, if there had been a request so to do, the bank would have expressly waived its rights to set aside the conveyance of the equity in the farm. At the time of the entry of the decree, the equity was of such doubtful value and the farm so heavily encumbered, that it was extremely doubtful whether Gladys Bolton would be able to avoid foreclosure and maintain her ownership of the farm for any appreciable length of time.

The bank, through its attorney, had litigated vigorously with Mrs. Gladys Bolton over two mules, which when sold, brought a reduction of the bank's claim in a net amount of less than $200. With this as an illustration of the bank's zeal in collecting its debt, we cannot believe that the value of the equity in the real estate was not fully considered by the bank's representatives before terminating the litigation with the Boltons and approving the final consent decree.

■ "The purpose of interpreting an instrument is to see what is the intention expressed by the words used. If from the imperfection of language it is impossible to know what the intention is without inquiring further, then see what the circumstances were with reference to which the words were used, and what was the object, appearing from those circumstances, which the persons using them had in view." *Holmes* v. *Elder et al.,* 170 Tenn. 257, 261, 262, 94 S. W. (2d) 390, 392, 104 A. L. R. 1282.

Here the language of the consent decree is perfectly clear and if there is any "imperfection of language," it is generic, but a consideration of the "circumstances," the knowledge and relation of the parties serves but to fortify the conclusion that they meant what they said by the words used. We have found no "circumstance" that supports the theory that the recognized and usual words of a full and final release, an accord and satisfaction, as embodied in the decree, have a more limited or restricted meaning or application in the case before us than these words normally have been construed to have.

Construction by the Supreme Court of the United States, in opinions by Justices Brandeis and Brewer, have fixed the meaning of very similar provisions in a contract in accord with our holding here. *St. Louis, K. & S. E. R. Co.* v. *United States,* 267 U. S. 346, 45 S. Ct. 245, 69 L. Ed. 649; *United States* v. *William Cramp & Sons S. & E. B. Co.,* 206 U. S. 118, 27 S. Ct. 676, 51 L. Ed. 983.

It is unnecessary for the disposition of the case to consider at length the evidence of laches and estoppel which led the Court of Appeals to affirm the decree for defendants. It is sufficient to say that if we had not first agreed with the chancellor, we should have finally agreed with the Court of Appeals.

All assignments of error are overruled and the decree of the chancellor is affirmed at the cost of petitioner-complainant.

## ON PETITION FOR REHEARING.

Petition to rehear has been filed on three propositions: (1) That in its former opinion the Court overlooked the well settled rule that the cashier, and not the president was the Chief executive officer of the Bank and that, therefore, the president had no authority to waive any rights the Bank had to set aside the conveyance by Bolton to his wife.

In addition to reasons assigned in the original opinion, we think the Bank is clearly estopped by its pleading to raise the question of President Castles' authority to enter the decree. Being a consent decree, it was a contract between the parties and to be construed as a whole, as is conceded in the petition to rehear, page 21. The Bank in its original bill predicates its suit upon that part of the decree which awarded it a money judgment against Bolton. Neither equity nor common sense will permit the Bank to enforce a money judgment which is a part of the decree, and deny to Bolton and his wife, rights afforded them by other parts of the same instrument. As the Bank has sued on the money judgment awarded in the decree and introduced the decree as a part of its proof, it is estopped to question the authority of the representative of the Bank by whom the decree was approved and entered.

Further, even if original authority had been lacking in Castles, the fact that the decree was entered February 7, 1939, and this suit not filed until May 1942, more than three years later, presents a clear ratification by the Bank and its officers, and of the action of Castles in ap-

proving the decree. *Bank* v. *Shook,* 100 Tenn. 436, 45 S. W. 338.

The second proposition of the petition to rehear is that since the petition for *certiorari* did not assail the construction by the Court of Appeals of the consent decree of Feburary 7, 1939, that therefore, such construction is conclusive upon us.

In support of this petitioner cites *Rose* v. *Brown,* 176 Tenn. 429, 143 S. W. (2d) 303, and *Independent Life Ins. Co.* v. *Hunter,* 166 Tenn. 498, 63 S. W. (2d) 668. We think that neither of these cases is authority for petitioner's contention. The rule for which those cases are authority, and which is otherwise established, is that a party to be entitled to redress or relief in this Court, must present his application for such relief or redress by petition for *certiorari.* Code, Sec. 10629. In both *Rose* v. *Brown* and *Independent Life Ins. Co.* v. *Hunter, supra,* the party seeking relief in the Supreme Court had failed to file petition for *certiorari* and relief was denied.

In the present case the defendants Bolton are seeking no relief. Since they have been successful both in the Chancery Court and the Court of Appeals, we may safely assume that they are satisfied and that it is a matter of indifference to them whether this Court affirms the Chancellor or the Court of Appeals in construing the consent decree, so long as we do not reverse the decree of either court.

However, upon a consideration of the Bank's petition for *certiorari,* we were confronted with this situation—that both the Chancellor and the Court of Appeals had denied the Bank relief, but assigned different reasons for the denial. As stated in our former opinion (186 S. W. (2d) at page 620), we considered that the grounds supporting both decrees were valid, but since we agreed

with the Chancellor that the consent decree was à final release of the Bank's claim, it was not necessary for us to go farther and hold with the Court of Appeals that in any event, the Bank by laches, was estopped to assert that the conveyance was fraudulent.

The questions presented in the petition to rehear are, therefore, purely academic so far as they would affect or change the ultimate rights of the Bank in this litigation. If we should reconsider our former opinion and hold now that the chancellor was wrong and the Court of Appeals was right, the bill of the Bank against the Boltons is, nevertheless, finally dismissed.

Here, as stated, the original bill of the Bank filed on May 4, 1942, is predicated upon a money judgment against Bolton which was contained in a "consent decree" entered February 7, 1939. The decree is before this Court as the indispensable and essential basis of the Bank's right to recover in this litigation. Such being the case, and the appeal being a broad one from a Chancery decree, this Court in writing the opinion which will finally dispose of the case and constitute an expression by this Court of the rules of law controlling it, is not limited by the opinion of the Chancellor or the Court of Appeals, nor by the vagaries of counsel in devising assignments of error to support the petition for *certiorari*.

As its third proposition on petition to rehear, the Bank urges that we have made an "*ex post facto*" construction of the consent decree, and by such construction inserted limitations of the Bank's right against Gladys Bolton, which the decree did not contain. This insistence is reargument merely and ignores the clear statement of our holding in the original opinion where we said that the decree, not by our construction, but in

express terms embodied a final release of all the Bank's claims against Gladys Bolton, and those express terms were these:

"This decree settles and determines every claim of every kind and character which the said complainant has or may have against the said defendants (i. e. Gladys and W. O. Bolton)."

Petition denied.