RAYMOND DAVIDSON

*v.*

STATE OF TENNESSEE.

443 S.W.2d 457

(*Jackson,* April Term, 1969.)

Opinion filed May 5, 1969.

Opinion on Petition to Rehear filed July 28, 1969.

H. T. ETHERIDGE and ROGER MURRAY, JR., Jackson, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and ALBERT D. NOE, IV, Assistant Attorney General, Nashville, and DAVID P. MURRAY, District Attorney General, and WHIT LaFON, Assistant District Attorney General, Jackson, prosecuted the case in the trial court for the State.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The plaintiff in error was indicted for violating the liquor laws on September 7, 1967, and was tried for this offense on September 22, 1967, the jury returning a guilty verdict and fixing the defendant's punishment at ninety (90) days in jail and assessing a fine of two hundred and fifty ($250.00) dollars. After a motion for a new trial was seasonably filed and overruled, and a motion for a suspended sentence was made and likewise overruled, a judgment was entered and in due season the plaintiff in error perfected an appeal to the Criminal Court of Appeals where the case was heard and the suit dismissed because the technical record in the case showed the following:

"This day came the Grand Jury into open Court in charge of their sworn officer, James Davis, Deputy Sheriff of Madison County and returned the following indictments and presents to-wit:—One presentment against RAYMOND DAVIDSON charging him with V.L.L. Signed by the Foreman and Members of the Grand Jury. A TRUE BILL, Summon for the State, Charles L. Stanley, Jim McClintock, Marvin Wood.

DAVID P. MURRAY
Attorney General."

The majority opinion dismissed the case and remanded it because, "There is no violation of law known as V.L.L. and it is only by reading the briefs filed by the attorneys that one may surmise the defendant was tried for violation of Section 39-2507, which makes the possession of intoxicating liquors a misdemeanor." The Pre-

siding Judge of the Court of Criminal Appeals dissented while two opinions were written by the other two members sustaining the dismissal for the reason above set forth. One of these opinions cites many cases as authority for doing this. The dissenting opinion points out that this fact was not mentioned or brought out by either party prior to its argument and submission to the Court of Criminal Appeals which acted as above indicated. The Presiding Judge correctly in his dissenting opinion says this and then says that the statement of the case in the briefs of the plaintiff in error was that Davidson had been indicted for the offense of violating the liquor laws by receiving and possessing intoxicating liquors. This is correct. None of the parties had noticed this until the Criminal Court of Appeals in a majority opinion dismissed the action because there was nothing charged against the man except "V.L.L."

In due season the State filed herein a petition for certiorari and accompanying this petition for certiorari was a motion for diminution of the record asking to have the original presentment, or a certified copy thereof, sent to this Court. After a full study of the matter we were convinced that the petition for certiorari should be granted, which it was, and after this was done we sustained the motion of the State for diminution of the record and it was ordered that this be done. There is likewise accompanying the petition for certiorari the original presentment wherein this man was indicted. This presentment shows the man was indicted for "unlawfully receiving intoxicating liquors in the State." This was signed by the District Attorney General and duly certified by the Clerk of the Court, Mr. William Bond, certifying that this was a true copy of the presentment on file in this case.

We then come to the question of whether or not this record could be thus corrected to show what "V.L.L." in the indictment meant by a diminution of the record. In other words, it clearly appears that the Clerk in writing up this technical record as different offenses are so frequently referred to in the Criminal Courts by letters, as driving while drunk, violating the liquor laws, etc., merely used the letters instead of the language of the indictment. The statute, T.C.A. sec. 40-1710, requires that felony indictments be entered in full on the minutes of the court, but there is no requirement in our statute that misdemeanor indictments or presentments be so entered. The object of the statute in requiring indictments in felony cases to be spread upon the minutes proceeds upon the cautionary and conservative ground for use in the case when the original papers are lost or mislaid. This Court in 1876 in *Glasgow v. State*, 68 Tenn. 485, held that the failure to spread the indictment for a felony upon the minutes of the court neither enlarges nor dismisses the rights of the accused since the object of such a proceeding is simply to provide against the consequences of loss, abstraction or destruction of the original. It does not invalidate the indictment.

This Court in 1846 in the case of *Brown v. State,* as reported in 26 Tenn. (7 Humph.) 155, held that the Clerk's failure to endorse "a true bill", the failure to have the signature of the foreman of the grand jury as is required in felony indictments and the spreading of this indictment upon the minutes of the court are immaterial when the original indictment is in existence. This same holding was later affirmed in 1887 in *State v. Herron*, 86 Tenn. 442, 7 S.W. 37. In the *Brown* case, supra, the Court used some language which is applicable to the situation here:

"The statute requiring indictments in the cases of felony to be spread upon the minutes proceeds upon cautionary and conservative grounds, because some indictments have been lost, not with the view to affix a higher or an exclusive verity to the record from the minutes, which is indeed a copy by the clerk from the original. And if there were any difference between them, both being in existence, perhaps the greater faith would be conceded to the original."

And then the question was asked, "Does the record in the case before us, in view of the decisions of this court, sufficiently show the finding of the bill of indictment by the grand jury and its return into court?" The question is discussed at some length and it was determined that this did not void the judgment. The Court said in *State v. Herron,* supra, that:

"But it was not contemplated by the legislature and should not be held by the courts, that his failure to perform that duty *shall vitiate the original indictment,* and defeat a trial of the prisoner upon it, when the original indictment is itself actually in file in the case, with proper indorsement and signature upon it, as in the case before us. * * *

"Therefore, we think the omission disclosed by this record is not fatal to the indictment."

This statute (T.C.A. sec. 40-1710) which has been thus construed by the Court a hundred years ago was applicable to felony indictments. The offenses for which the plaintiff in error here was indicted are both misdemeanors. (T.C.A. sec. 39-2506, and sec. 39-2507). It appears that there exists a loophole in the statute describing the precedural steps to be taken with regard to misdemeanor

indictments if the decision of the Court of Criminal Appeals is to stand.

No question has been raised by the two able attorneys for the plaintiff in error as to the sufficiency of this technical record or as to the sufficiency of the minute entry of the presentment. Neither party noticed this apparently prior to its being pointed out and the suit dismissed by the Court of Criminal Appeals. The case was briefed and argued on entirely other grounds. The State likewise did not undertake to supplement the record by a motion suggesting diminution in regard to the possibility of the insufficiency of the record in this respect, and apparently it was not noticed by either side until pointed out in the opinion of the Court of Criminal Appeals.

The question here under our statutes and their construction by the courts over the years is whether a certified copy of the presentment upon which the accused was tried may now be presented to this Court by a suggestion of diminution of the record so as to correct an obvious error in the transcript. It is thus after this Court has granted the petition for certiorari that it now has jurisdiction of this case, and, since it has jurisdiction of the case, it is the proper and correct thing for this Court to grant the diminution of the record so as to have the certified copy of the original of this presentment sent up, which it has done, and thus shows what the man was charged with doing and what the jury was told that he was charged with doing and their finding upon this presentment charging him with violating the liquor laws. This presentment and the way it is now prevails over the minutes as transcribed by the clerk. See *Page v. Turcott,* 179 Tenn. 491, 167 S.W.2d 350.

█ There is no doubt in our mind but that pleadings are a part of the technical record. *Duane & Co. v. Richardson,* 106 Tenn. 80, 59 S.W. 135; *Johnson v. Johnson,* 185 Tenn. 400, 206 S.W.2d 400; Caruthers, History of a Lawsuit, sec. 431, 8th Ed. An indictment or presentment is a pleading and thereby a part of the record. This being true we unquestionably and unhesitatingly allowed the State's motion for diminution of the record and thus it now will prevail over a copy of the minutes as transcribed in the technical record.

It seems to us that the Court of Criminal Appeals based their opinion on a false assumption, that is, that the respondent went to trial on a presentment "charging him with V.L.L." It thus results in view of this diminution as to what the man actually went to trial on that the decision of that court was incorrect and should be reversed, which it is.

The State in its petition for certiorari and brief points to a Florida case, that of *Turner v. Shelfer,* 91 Fla. 39, 107 So. 247, for the proposition that this Court should correct the minutes so that the record may reflect the true facts and not an erroneous state of facts. That court, that is the Florida court, among other things, said:

"Another ground of the motion to dismiss the appeal is that it was taken May 11, 1925, and made returnable December 27, 1925, more than 90 days from its date. Sections 2908 and 3173, Rev.Gen.Stats. 1920. It is, however, shown by certified copy of the record below that the recitation in the transcript that the appeal was taken May 11 is erroneous, and that the entry of appeal was filed for record on October 12, 1925, and

duly recorded, making it not subject to the stated ground of the motion to dismiss. The certified copy of the entry of appeal and of its record in the chancery order book as required by the statute will be made a part of the transcript here."

Even though this is a civil case from a sister state the logic and reasoning of it are particularly applicable to the factual situation here. Then, too, in 1911 the Legislature passed our Harmless Error Statute (T.C.A. sec. 27-116 and sec. 27-117). These statutes clearly require that reversals should be granted only on the merits and not for harmless errors. The error here, if it had been pointed out or suggested by the plaintiff in error or if noticed by the State prior to its submission to the Court of Criminal Appeals, would have and should have been corrected by them by their ordering and granting a motion for diminution of the record.

We will now set forth the facts. An agent of the Alcoholic Beverage Commission obtained a search warrant to search the Pine Ridge Beer Tavern on Highway 18, the highway leading from Jackson to Bolivar in Madison County. This agent testifies, and the record shows, that he went to this club about 4:30 in the afternoon, and found a bartender and two or three customers sitting around drinking beer. He searched the premises and found in the backroom forty-five (45) half pints of tax paid whiskey therein. There was a beer license on the wall inside this place in the name of the defendant, Raymond Davidson. When this search was made this agent testified he asked the bartender who ran the place and to call the manager. He said that the bartender immediately made a telephone call and about thirty minutes later the defendant came to the club. The defendant said

he did not know the whiskey was there but that he was the manager of the club. The defendant said the business was his, but that the whiskey was not supposed to be there.

Another agent of the Alcohol Beverage Commission was likewise on this raid. He testified to the same effect as Agent Stanley; he said also that the defendant denied that he owned the whiskey but said that he was the manager of the club. At the end of this proof a motion for a directed verdict was made and overruled by the trial court.

The questions raised and the errors assigned in the Court of Criminal Appeals were:

"1. There is no material or substantial evidence to support the verdict of the jury and the evidence preponderates against the verdict of the jury and in favor of the innocence of the defendant.

"2. The Trial Court erred in admitting testimony of a State's witness that the beer license on the wall was in the name of the defendant, said testimony being hearsay and not the best evidence."

▆▆▆▆ Able counsel for the plaintiff in error makes the very plausible argument that the evidence in the record preponderates against the verdict and in favor of the innocence of the accused. It has been held by the decisions of this Court for practically a hundred years that with nothing to the contrary on appeal, after a jury has determined the facts against a man, the burden is on the plaintiff in error to show that the evidence preponderates against the verdict and in his favor. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826. The whiskey was found on the premises of the plaintiff in error and he admitted to

both of these State's witnesses that he was the manager of this establishment. When the bartender, the one there at the time of the search, made a call in a very few minutes the plaintiff in error appeared and admitted that he was the manager. It seems to us that this assignment of error should be overruled and that the evidence fully complies with the test as laid down by many cases and particularly that of *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173, certiorari being denied by the Supreme Court of the United States in 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d. 499.

The contention of the plaintiff in error through his able counsel is that since the State didn't produce the beer license with the defendant's name on it and did not explain the non-production of the license before the testimony of the officers as to what the license showed, that is, that it showed Davidson's name on it, this constituted reversible error on the ground that the evidence was inadmissible. In researching this question the State cites the case of *Commonwealth v. Brown,* 124 Mass. 318 (1878). We do not have this report in our library and the case was written before the reporter system went into effect, but we have before us Wharton's Criminal Evidence, Vol. 2, 12th Ed., Anderson, which cites this case, and the author of this work says:

"Thus, without production of explanation of non-production, witnesses may give parole evidence of the following: the inscriptions on banners at public meetings; the writings on a trunk tag at least for the purposes of identification; a license hanging on a wall [the note for this last statement cites the *Brown* case, supra]; the marks on clothes and other articles of personal property; the brands on a cow; the marks on

the heads of certain barrels for the purpose of identifying them; and the numbers on tires or automobile license plates." Wharton's Criminal Evidence, 2nd Ed., page 506, sec. 611.

These officers testified that this license was hanging on the wall and they saw it, and they asked the bartender where the manager was and he called him and then the person showed up and admitted that he was the manager but said that the liquor was not his. Therefore, it seems to us that the testimony of the men who saw this license on the wall may be proven from what they saw. See also Wharton's, supra, at page 503. The fact that this license was hanging on the wall was a fact that could be observed by a witness and was admissible because the witness was testifying as to what he observed, not as to what the writing contained. In other words, the testimony was not as to the contents of the writing but as to what the witness could and did observe. It seems to us that the distinction is that the witness might testify he saw a person holding an airline ticket while waiting to board an airplane, but he could not testify as to the final destination, terms of the contract of carriage, or the price of the trip, written on the ticket, without producing the ticket or explaining its absence. In the same Edition of Wharton's above, page 476, in this regard it is said:

"* * * the best evidence rule is applicable only to the proof of the contents of documents or recordings."

Normally a document in the possession of an adverse party need not be entered in the proof, but the contents of the document may be proven by parole evidence without prior proof of notice to produce the origi-

nal document. See same Edition of Wharton's supra, page 481. The beer license might be called "a transitory document" for purposes of the question at bar, as referred to in sec. 611 of Wharton's supra. The applicable rule being that parol evidence may be given as to a document, like a license, which is so evanescent and transient that the incapacity of the party (seeking to produce them) may be assumed without proof.

Finally, the State takes the position that this testimony as to the defendant's beer license was proof on a collateral issue and was admissible as an exception to the "best evidence" rule, and the State cites for this Wharton's, supra, sec. 605. It seems to us after spending some two or three days working on this case, and thinking about it, that unquestionably it becomes the duty of the Court under such a situation to grant an order for diminution of the record and then determine the case on the merits rather than dismiss it without either party knowing the reason it was dismissed. The authorities, as we see them, clearly warrant the order we are making herein for diminution of the record, and under this record the evidence clearly shows the man to be guilty.

The proof of the possession of whiskey as shown herein fairly indicates that it was acquired since the enactment of Chapter 12, Public Acts of 1917, and in the absence of any proof that the liquor was manufactured on the premises where found the inference is clear that the accused either transported the whiskey to the place where found or received it there. *French v. State,* 159 Tenn. 451, 19 S.W.2d 276.

The "bone-dry" law is still in force all over Tennessee with certain exceptions and under certain conditions in certain localities. See *Daniels v. State,* 176

Tenn. 181, 140 S.W.2d 148. In cases of this kind the burden is on the defendant, who is now plaintiff in error, who is indicted under the "bone-dry" law to show the possession was legal under the local option law. *Renfro v. State,* 176 Tenn. 638, 144 S.W.2d 793.

Over the years we have had many liquor cases and by research of the authorities one can find one that covers most every situation. One fundamental in all these liquor cases is the presumption, when liquor is found in the house or place of business that the plaintiff in error has control of, this liquor is in his possession and belongs to him. Such a presumption presents a legal situation for the jury to decide in the absence of proof to the contrary. We had one case several years ago of *Hicks v. State,* 194 Tenn. 351, 250 S.W.2d 559, which is authority for the proposition that when liquor is found in one's home in 1949 this warranted the conclusion that the defendant came into possession of the liquor since 1917 (Chapter 12, Public Acts of 1917). See likewise *Younger v. State,* 206 Tenn. 558, 335 S.W.2d 828; and *Turner v. State,* 216 Tenn. 714, 394 S.W.2d 635.

After a thorough consideration, as said above, of this matter we are convinced that there is no error in this record, and the judgment below should be affirmed.

## On Petition To Rehear

The plaintiff in error has filed herein a courteous, forceful and dignified petition to rehear. The opinion of this Court was handed down on May 5, 1969. The burden of this petition is that this Court reversed the decision of the Court of Criminal Appeals and in so doing has not allowed the Court of Criminal Appeals to pass on the assignments of error therein made, because we re-

versed that court on the State's petition for certiorari which raised only the question of the sufficiency of the indictment wherein the Court of Criminal Appeals had reversed because it thought the indictment was not good. It is therefore argued that we should remand this case to the Court of Criminal Appeals for the purpose of allowing that court to pass on the merits of the original assignments therein.

We on the threshold are faced with the holding of this Court in *Independent Life Ins. Co. v. Hunter,* 166 Tenn. 498, 506, 63 S.W.2d 668, 671, that: "no error of the Court of Appeals, either of commission or omission, can be reviewed by this court except upon petition for certiorari." A number of applications of this rule may be found by Shepardizing this case. When this rule was stated the Court did not take into consideration a state of facts as herein presented. Over the years different circumstances have arisen.

■ We are of the opinion that when certiorari is granted one party, and the other party has not assigned error but has unanswered errors assigned in the Court of Appeals that this Court may answer those unanswered errors in the Court of Appeals and thus dispose of the entire case.

■ When certiorari is granted to one party and the other party does not assign cross-errors (we have Rules 12 [second paragraph], 13, and 15 [2] allowing them to do so) the party not assigning waives the right to do so.

■ It is fundamentally, legally and historically true that the granting of certiorari removes the whole case to the reviewing court so that we may consider any

errors which have been committed in the trial of the case. This power of our Court is exemplified in those cases which hold that we can consider any error committed, even without assignment of error, when the justice of the case requires it. Our Rule 15 [2]; Court of Appeals Rule 13 [last paragraph]; *Norton v. Standard Coosa-Thatcher Co.*, 203 Tenn. 649, 658, 315 S.W.2d 245, 249, and others; sec. 27-823, T.C.A.

 Having considered this case on its merits as well as on the question presented on the State's petition for certiorari, we for reasons herein stated must overrule the petition to rehear. The costs will be assessed against Davidson and his sureties.