94 F.3d 644
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
W. Allen CARGILE, Plaintiff-Appellee,
v.
MTD PRODUCTS, INC., Defendant-Appellant.
 No. 95-5549.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1996.
 
 Before: NELSON and BATCHELDER, Circuit Judges, and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 In this appeal we review the applicability of the partial performance exception to the Tennessee statute of frauds to the facts of this case. We have reviewed the district court's factual findings for clear error and its legal conclusions de novo. For the reasons that follow, we affirm the judgment of the district court.
 
 I. FACTS AND CASE HISTORY
 
 2
 W. Allen Cargile contacted MTD Products, Inc., regarding the manufacture and marketing of a lawn mower which Cargile had developed. Cargile met with MTD's president, David Campbell, and vice-president/head engineer, Hartmut Kaesgen, at the Louisville Expo, a trade show for lawn-care products. Prior to discussing details, Campbell signed a document which prevented MTD from using or revealing Cargile's ideas to other parties. The document also included the following language regarding MTD's potential financial obligations to Cargile: "With $100,000 non-refundable payment one year prior to use, deductible from future royalties at $.25/unit."
 
 
 3
 Once the document was signed, Cargile, Campbell and Kaesgen discussed and reviewed the technical materials regarding the mower. Campbell and Kaesgen liked Cargile's idea and asked him not to show the materials to other manufacturers at the Expo. Since he had come to the trade show specifically to market the mower, Cargile initially balked at the request but agreed to think about it.
 
 
 4
 That night, Cargile drafted some terms on a piece of Holiday Inn notepaper. Those terms, in Cargile's handwriting, stated in pertinent part:
 
 For exclusive rights
 25,000 earnest money now
 
 5
 75,000 bal. to deposit 3 wks.
 
 
 
 100,000
 The next morning, July 29, 1991, Cargile presented Campbell and Kaesgen with the notepaper. After conferring privately about the "for exclusive rights" terms, Campbell and Kaesgen proposed different numbers on the reverse side of the notepaper:
 5,000 now
 20,000 3 weeks
 75,000 1 year or when in production
 Cargile initially did not approve the counter-proposal, but eventually accepted it on July 30, 1991. Immediately following Cargile's acceptance, Campbell and Kaesgen asked Cargile to take the mower up to their testing facility in Cleveland. Cargile made the drive the following morning, delivered the mower, and received a check from MTD in the amount of $5,000.
 At some point during the testing period, MTD informed Cargile that it would not manufacture the mower due to expensive production costs and the inefficacy of the mower. Cargile retrieved the mower from MTD roughly four weeks after he dropped it off. Cargile did not receive any more payments from MTD and eventually filed a diversity suit against MTD.
 A one-day bench trial was held on December 7, 1994. Cargile, Campbell and Kaesgen testified before the district court. The district court judge made extensive findings of fact and conclusions of law. The conclusions of law include the following: (1) the writings in this case did not evidence the terms of the agreement with sufficient certainty to satisfy the Tennessee statute of frauds; (2) Cargile fully performed his obligation under the contract by delivering the prototype mower and refraining from further marketing of the design, while MTD partially performed by paying Cargile $5,000, thus removing the contract from the statute of frauds; (3) the nature of the agreement was to compensate Cargile $100,000 for exclusive review of the mower as well as for Cargile's refraining from marketing it to other manufacturers. The district court therefore awarded $95,000 to Cargile. MTD filed this timely appeal.
 II. ANALYSIS
 The agreement between Cargile and MTD presents questions of contract interpretation. The district court's findings of fact are reviewed for clear error pursuant to FED.R.CIV.P. 52(a). When the underlying factual findings "rest on credibility determinations, Rule 52 demands even greater deference." Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985). However, "the legal import of those findings is assessed in light of the parties' contractual agreement, a matter which is entitled to plenary review," City of Covington v. Covington Landing Ltd. Partnership, 71 F.3d 1221, 1227 (6th Cir.1995), since a district court's conclusions regarding ambiguity in contract language are reviewed de novo. See First Am. Nat'l Bank v. Fidelity & Deposit Co., 5 F.3d 982, 984 (6th Cir.1993).
 A. Enforcement Pursuant to the Partial Performance Doctrine
 "The most commonly recognized exception to the Statute of Frauds is the doctrine of part performance. Under it an otherwise unenforceable oral contract can be the basis of an action if one of the parties has performed. In this jurisdiction courts ... will enforce a verbal contract as to personal property where there has been partial performance." Trew v. Ogle, 767 S.W.2d 662, 664 (Tenn.Ct.App.1988) (citations omitted). Although the transaction between Cargile and MTD fell squarely within the Tennessee statute of frauds,[1] the district court held the agreement was removed from the statute since MTD's $5,000 payment and Cargile's forbearance in marketing, combined with his delivery of the prototype, constituted partial performance.
 We find no error in the district court's conclusion that the partial performance exception applies in this case. Although the district court incorrectly relied on previous Tennessee cases which dealt with specific statutory provisions permitting the partial performance exception, partial performance can remove an agreement from § 47-1-206. This is so because Tennessee deems the doctrine of partial performance as "purely an equitable doctrine," Buice v. Scruggs Equipment Co., Inc., 250 S.W.2d 44, 48 (Tenn.1952), and "principles of law and equity" supplement § 47-1-206. TENN.CODE ANN. § 47-1-103 (1963) (supplementary general principles of law applicable to chapters 1-9 of title 47).
 We are not persuaded by MTD's challenges to this conclusion and therefore affirm the district court's finding on this point.
 B. Factual Findings and Interpretation of Terms
 As stated above, the factual findings of the district court are reviewed for clear error. A thorough review of the record leads to the conclusion that the lower court's findings of fact are not clearly erroneous, but rather are substantiated by the testimony of both parties.
 The task of deciding the legal import of those findings and interpreting the agreement is quite demanding. "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles." Union Planters Nat'l Bank v. American Home Assurance Co., 865 S.W.2d 907, 912 (Tenn.Ct.App.1993) (citations omitted). The court "is required, if the contract is ambiguous, to determine the intention of the parties not alone from the language of the contract but also from the surrounding facts and circumstances." HMF Trust v. Bankers Trust Co., 827 S.W.2d 296, 299 (Tenn.Ct.App.1991) (citations omitted). Under Tennessee law
 [t]he purpose of interpreting an instrument is to see what is the intention expressed by the words used. If from the imperfection of language it is impossible to know what the intention is without inquiring further, then see what the circumstances were with reference to which the words were used, and what was the object, appearing from those circumstances, which the persons using them had in view.
 Id. (citing Barretsville Bank & Trust Co. v. Bolton, 187 S.W.2d 306, 310 (Tenn.1945)). Applying these tenets in a de novo review of this case, we agree with the interpretation divined by the district court.
 III. CONCLUSION
 Accordingly, the ruling of the district court is AFFIRMED.
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The district court found that the subject-matter of the agreement was covered by TENN.CODE ANN. § 47-1-206 (1963), which states:
 Statute of frauds for kinds of personal property not otherwise covered.--(1) Except in [cases involving the sale of goods or securities] a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars ($5,000) in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.