# CLINCHFIELD STONE CO., Inc. v. STONE et al.— 254 S. W. (2d) 8.

Eastern Section.   May 22, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

Simmonds & Bowman, of Johnson City, and William E. Weber, of Kingsport, for appellant.

Penn, Hunter, Smith & Davis, and Napoleon Bond, all of Kingsport, for appellees.

HOWARD, J. The petition of Clinchfield Stone Company, Inc., in this matter was filed to have the Chancery Court construe three consent final decrees entered on the 22d day of April, 1949, and modify the same so as to permit petitioner to operate its stone quarry underground.

The Stone Company was operating its quarry on leased land, and was engaged in the business of quarrying and selling stone. H. G. Stone and wife, feeling that the Stone Company was operating its quarry in an unlawful manner to their injury and damage, filed a suit in the Chancery Court at Kingsport, Tennessee, on September 11, 1947, to enjoin the Company from operating "in a manner that would damage and injure plaintiffs", etc., and to recover damages alleged to have been inflicted. Subsequently, Dr. W. H. Reed and wife, and Virginia D. Collins, filed similar injunction suits for like relief.

At a later date but prior to the trial of the three cases a consent final decree was entered in each of the cases, identical in terms except as to the amount of damages paid to each of them. The material provisions of said decree were as follows:

"1. The parties agree that in the operation of the quarry by the defendant, that the defendant will limit its shots of explosives at its quarry site to 7,500 pounds of explosives in 'well drilled' shots, 400 pounds of explosives in 'ledge' shots and five pounds of explosives in 'pop' shots; that the defendant will not use what is known as 'dobie' shots; that the defendant will not shoot 'well drilled' shots more than once during every ten days, that is that the 'well drilled' shots will be limited to not exceeding 7,500 pounds of explosives and the same to be at

least ten days apart; and that all explosive shots permitted hereunder will be fired only during daylight hours.

"2. The defendant agrees to cease all use of explosives and to cease all quarrying operations, at the present quarry site on or before April 25, 1951; *provided however, that this shall not prevent the defendant from relocating its quarry at some other place, as it is not the intention of the parties to prevent the defendant from continuing in the quarrying business at some other site; same to be at a distance where the operation of said quarry will not physically or otherwise do injury or damage to complainants' property or the peaceful use and enjoyment of same, said property being described in the original bill.*

"3. That at present there are two asphalt plants located on defendant's quarry site; and it is agreed that defendant will not permit the operation of any asphalt plant on its quarry site property, other than the present operation of Bullard Paving Company, or in lieu thereof, one of similar size, after June 25, 1949, on or before which date Wesco Paving Company will cease all operations of its asphalt plant now located at said quarry site; it being understood that from and after June 25, 1949, only one asphalt plant, of the size mentioned above, will be in operation at any one time at the quarry site.

"4. The defendant agrees to give the complainants at least twenty-four hours notice prior to the time that the defendant begins to load for the 'well-drilled' shots, said notice to state the approximate hour such explosives will be fired; and that the com-

plainant may select, along with W. H. Reed and Virginia D. Collins (complainants in pending suits), one person to be present at the quarry during the loading of any 'well drilled' shots, so as to determine that the amount of explosives being used in the 'well drilled' shots does not exceed 7,500 pounds; that the costs of the services of such person shall be paid by the defendant but not to exceed $15.00 per 'well drilled' shot.

\* \* \* \* \* \*

"7. It is expressly understood and agreed between the parties, that the defendant, by reason of agreeing to this compromise, admits no liability of any sort and has made no representation as to its liability, and further, that this compromise agreement is made solely to avoid further expense and litigation in the pending litigation.

"8. The terms of this agreement and decrees shall be binding upon the parties hereto, their heirs, personal representatives, successors and assigns, respectively.

"9. *The foregoing agreement is hereby made the decree of the Court, by consent of the parties and all orders heretofore entered are hereby modified to conform herewith; all of which is ordered, adjudged and decreed accordingly.*

"10. *Any violation of this decree may be brought to the attention of the Court by petition in this cause upon five (5) days notice to the defendant, and the cause is retained on the docket for the enforcement thereof.*" (Emphasis supplied.)

On April 9, 1951, the defendant (Stone Company) filed a petition in each of the above cases alleging in substance

that petitioner had entered into the decrees in the utmost good faith and had made a conscientious effort to live up to them, and that there had been a change in conditions, both in the demand for crushed stone and in the method of mining same, and that under the method of operating under-ground all noise, dust, vibration and other objectionable features of quarrying limestone would be eliminated. Therefore, contending that operation under-ground would not violate the terms of the consent decrees, petitioner prayed that said decrees be so construed and interpreted as not to prohibit it from moving its business under-ground.

Following the filing of said petition complainants filed a motion and petition asking the Court to enforce the consent final decrees and compel the defendant to cease quarrying operations and remove its quarrying plant. At a hearing on the motion the Chancellor subsequently entered an order rearranging the pleadings so as to treat the original petition of the defendant as an answer to complainant's petition for enforcement of the decrees. This order was based upon the Chancellor's memorandum opinion and made a part thereof, as follows:

"After reviewing the pleadings in this cause I find the same to be:

"1. Clinchfield Stone Company, April 9, 1951 filed its petition seeking a declaration its contemplated action would not violate the decree of April 22, 1949.

"2. May 2, 1951, complainants moved to strike petition of Clinchfield Stone Company.

"3. May 2, 1951, complainants filed petition for enforcement of the decree of April 22, 1949, against Clinchfield Stone Company.

"4. May 2, 1951, complainants answered petition of Clinchfield Stone Company.

"5. May 2, 1951, Clinchfield Stone Company asked to treat its petition of April 9, 1951, as answer to complainant's petition of May 2, 1951, which was granted and moved to amend the petition to seek a declaratory judgment and allege it had not violated the decree.

"6. In the brief of the Clinchfield Stone Company is stated:

" 'We therefore withdraw the amendment asking that the petition be treated as a bill for declaratory judgment.'

"The effect of these pleadings is that the purpose of the original petition for a declaratory determination is lost. The cause stands for trial on the petition of Virginia D. Collins, Herbert G. Stone and Dr. W. H. Reed, seeking an order of enforcement, as answered by the petition of the Clinchfield Stone Company. It has been filed as an answer, in each case, to the petition for enforcement.

"It is suggested that counsel agree upon a date of trial, and while each case is separate it might save time to treat the evidence as taken in each case or to treat the cases as consolidated."

Upon the hearing the defendant introduced several witnesses who qualified as experts in the quarrying of rock. Their testimony showed that there was a great demand for crushed limestone, the lack of other suitable sites in the area for relocation of the quarry, and the feasibility of relocation underground at the present site. These witnesses stated that tunneling underground and removing rock by mining methods would be safe and would not result in damages to complainant's properties and the peaceful enjoyment thereof, and that such operations could be carried on underground without harm.

The Chancellor held that the above proof was immaterial to the issues involved, and in a memorandum opinion sustaining the complainant's petition to enforce the consent decrees, said:

"As is developed on the trial of the cause, all parties were represented by counsel, and able counsel. The complainant H. G. Stone is an engineer of note and the president of the defendant company is a graduate of Princeton; therefore there was no misunderstanding of the meaning of the words at the date of entry and no one insists any mistake of wording was made. Also the president of the defendant company by his actions admits that he first construed this decree as meaning that he would have to move the entire quarry and cease all operations at this point, for he details his many investigations of the country nearby and around Kingsport, where he sought a quarry site. Also the Vice-president of the defendant, Mr. Sims, sought to approach the complainant upon an agreement to allow defendant to continue operation after April 1951. No witness is offered in contradiction to this interpretation and no attorney testifies he did so understand it, nor does any litigant testify he did not so understand this decree. Therefore, this Court holds and declares that at the time this decree of April 22, 1949, was entered it was the clear understanding of all parties thereto that the defendant would cease all quarry operations, that is the blasting, crushing and taking of stone at this point and would move its entire quarry operation to some other site.

"Thus the remaining question is whether or not the changes since the entry of the decree warrant

the Court in refusing to enforce its own decree. On
this the evidence shows that the Clinchfield Railroad
may be greatly damaged by losing a convenient and
readily available stone of the quality necessary for
its use on its roadbed, and thus will have such ad-
ditional expense that its roadbed may suffer, and
the operator of the asphalt will suffer the costs of
moving it to some other place, and the users of
stone in Kingsport may be inconvenienced. Also
it appears that due to the war situation and the un-
usual demands around Kingsport for building, and
roads, inconvenience may result to all the general
public. However, it is answer to all of this to say
that no one nor all of these could insist that the
defendant continue in business when it should vol-
untarily desire to cease business. There is no reason
shown why a quarry may not be maintained at an-
other site, and there is no reason that an under-
ground mining of stone cannot be carried out at an-
other site. Truly this one is already leased, but each
and every one of these was in the same place on
April 22, 1949, and no one of them has changed un-
less it has increased its demand for stone.

"Facts existing when a bargain is made or occur-
ring thereafter making performance more difficult or
expensive than the parties anticipate, do not pre-
vent a duty from arising or discharge a duty that
has arisen. Restatement of Contracts Sec. 467; 12
Am. Jur. (Contracts Sec. 362) p. 928. This Court
can see no reason why the decree of the Court is not
entitled to at least as strong a construction as a
contract, and declares that the charges here detailed
by the witnesses are insufficient to cause this Court
to deny the enforcement of this decree.

"As the cause was retained specifically for the enforcement of the decree let the complainant have such relief as will accomplish the intents of the decree."

The defendant has perfected an appeal to this Court and errors have been assigned, the chief complaint being the refusal of the Chancellor to modify the original consent decrees so as to permit the defendant to continue its quarrying operations at its present location, but underground.

It is the contention of defendant that the consent decrees are nothing more than contracts of the parties, and that complainants' petitions for enforcement are nothing more than motions for specific performance. On the contrary, said decrees must be deemed final and unchangeable to the extent of their terms. In Gibson's Suits in Chancery, 4th Ed., it says:

"A decree is frequently made by consent of parties. In such a case, the court does not inquire into the merits or equities of the decree, nor whether it is sustained by the pleadings. The only questions for the court to determine are: (1) Are the parties capable of binding themselves by consent; and (2) Whether they have consented, or do now consent, to the proposed decree.

\*      \*      \*      \*      \*      \*

"A decree by consent is in the nature of a solemn contract; and is, in effect, an admission by the parties that the decree is a just determination of their rights upon the real facts of the case, had such been proved. *As a result, such a decree is so binding as to be absolutely conclusive upon the consenting parties, and it can neither be amended, nor in any way varied,*

*without a like consent, nor can it be reheard, appealed from, or reviewed upon a writ of error.''* Section 577. (Emphasis supplied.)

In numerous decisions the appellate courts of this state have recognized and followed the foregoing rule regarding consent decrees. Williams v. Neil, 51 Tenn. 279; Musgrove v. Lusk, 2 Tenn. Ch. 576; Jones v. Williamson, 45 Tenn. 371; Boyce v. Stanton, 83 Tenn. 346; Lindsay v. Allen, 112 Tenn. 637, 82 S. W. 171; Kentucky-Tennessee Light & Power Co. v. Beard, 152 Tenn. 348, 277 S. W. 889; Coley v. Family Loan Co., 168 Tenn. 631, 80 S. W. (2d) 87; Barretsville Bank & Trust Co. v. Bolton, 182 Tenn. 364, 187 S. W. (2d) 306.

Where a consent decree has become final and has passed beyond the control of the court, as in the present case, it is conclusive on the parties and can be amended or vacated only by consent, in the absence of fraud or mistake. Gibson's Suits in Chancery, 4th Ed., Secs. 573, 576, 577; Kentucky-Tennessee Light & Power Co. v. Beard, supra; College Coal Mining Co. v. Smith, 160 Tenn. 93, 21 S. W. (2d) 1038; 30 C. J. S., Equity, Sec. 682, p. 1130; 19 Am. Jur. Sec. 407, p. 280.

In College Coal Mining Co. v. Smith, supra, the court held that where a judgment was entered by consent for a given amount for compensation, the decree could not be corrected at a later term on the ground that the amount allowed was too large, the court saying:

"It has been quite uniformly held that, while clerical errors in judgments and decrees, apparent on the face of the record, may be corrected at a subsequent term, errors in legal construction and opinion, or in conclusions of fact, cannot be so corrected.'' (Citing numerous cases.)

In Kentucky-Tennessee Light & Power Co. v. Beard, supra [152 Tenn. 348, 277 S. W. 890], it was held that leave to amend after entry of consent decree was properly denied, the court saying:

"The Court of Civil Appeals was of the opinion that petitioner was bound by the consent decree which could only be impeached for fraud, and was not open to reconsideration by the court. In this conclusion we think the Court of Civil Appeals was correct.

"In Williams v. Neil, 4 Heisk. 279 [51 Tenn. 279], it is said: 'It is well settled that there lies no appeal or rehearing from a decree by consent, and such decree can only be impeached by an original bill in the nature of a bill of review, when it has been obtained by fraud or imposition. This is the result of all the authorities on this question.' "

It is also the "defendant's contention that the decrees, being consent decrees, and going beyond the jurisdiction and power of the court to enter * * * are merely contracts between the parties, and being, as defendant construes them, ambiguous as between the literal language and expressed purpose, are subject to construction * * * ."

■ As already stated, we think that the consent decrees are conclusive and, in the absence of fraud or mistake, cannot be amended or vacated except by the consent of the parties.

■ Regarding the court's jurisdiction and power to enter consent decrees, the general rule that the relief must be within the scope of the pleadings does not apply with full force and effect to consent decrees when the court, as in the present case, has jurisdiction of the parties and the subject matter involved. Bigley v. Watson, 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679; Wilson

v. Schaefer, 107 Tenn. 300, 64 S. W. 208; Barretsville Bank & Trust Co. v. Bolton, 182 Tenn. 364, 187 S. W. (2d) 306; East Lake Lumber Box Co. v. Simpson, 5 Tenn. App. 51; 30 C. J. S., Equity, Sec. 679, p. 1128. In Barretsville Bank & Trust Co. v. Bolton, supra, the court said [182 Tenn. 364, 187 S. W. (2d) 309]:

"A consent decree is a contract made final and binding upon the parties by the approval of the court (Boyce v. Stanton, 83 Tenn. 346), and need not be confined strictly to the subject matter and issues presented in the pleadings if the court has jurisdiction." (Citing cases.)

While the record discloses that the defendant withdrew the amendment asking for a declaratory judgment, the Chancellor, it appears, placed the following construction upon the decrees:

"Therefore, this Court holds and declares that at the time this decree of April 22, 1949, was entered it was the clear understanding of all parties thereto that the defendant would cease all quarry operations, that is the blasting, crushing and taking of stone at this point and would move its entire quarry operation to some other site."

It is apparent to us that the foregoing construction of the decrees was correct, as all of the proof showed that the defendant's officials were fully informed of the terms of the decrees prior to and at the time they were entered. This is further evidenced by the fact that the defendant in each of the petitions admitted that "during the month of April, 1949, the parties reached an amicable settlement of their differences as a result of which a consent decree was prepared and entered in the cause."

■ ■ In each of the defendant's petitions it is alleged that "Since the entry of said decree there has

been a marked change in conditions, both as to the demand for crushed limestone and as to the methods of quarrying same, which would seem to render it necessary and proper for petitioner to come to this court for a clarification of certain questions which might arise by reason of certain steps which it contemplates or desires to take." Under authorities previously cited, the term "changed conditions", without more, is insufficient to change or vary the terms of a consent decree. If such were the case there would be no end to litigation.

It is the further contention of the defendant that the court erred in ordering and decreeing that defendant cease all quarrying operations at its present site, and cease crushing rock thereat 15 days after July 24, 1951; that the court was without jurisdiction, power or authority to order the defendant to cease or desist to conduct a legal business in a lawful manner.

■ ■ It is argued that if the consent decrees could be treated as adjudicated matters, the court should have considered the equities or inequities of enforcement and should have so construed the consent decrees according to their declared spirit rather than the cold letter. While the law seems to be well settled that when a party comes into court seeking equity to enforce a former decree, the court may inquire whether the circumstances justify the relief sought, we do not think this rule applicable here for the following reasons: (1) There was no misunderstanding as to the intent and purpose of the decrees; (2) the defendant was satisfied with the decrees when they were agreed upon and entered of record; (3) there was no charge of fraud, and (4) the decrees expressly provide that (a) "The defendant agrees to cease all use of explosives and to cease all quarrying operation, at the present quarry site on or before April 25, 1951.";

(b) that "the terms * * * shall be binding upon the parties hereto, * * *" and (c) "any violation * * * may be brought to the attention of the court by petition in this cause upon five (5) days notice to the defendant, and the cause is retained on the docket for the enforcement thereof." It is a settled rule that where a person by his contract or agreement charges himself with an obligation possible to be performed, he must perform it, and he will not be excused therefrom because of unforeseen difficulties, unusual or unexpected expense, or because it is unprofitable or impracticable. Bryan v. Spurgin, 37 Tenn. 681; 17 C. J. S., Contracts, Sec. 459, p. 946; 12 Am. Jur. Sec. 362, p. 928.

It is an established rule that a court of equity has the power to enforce its decrees, and that such methods are available to enforce consent decrees. Under Code Section 10588 "Courts of chancery may enforce rules, orders, or decrees by process against the person in default, or by process against his property." See, Gibson's Suits in Chancery, 4th Ed., 646.

For reasons indicated, all of the assignments of error will be overruled, the decree will be affirmed at defendant's costs, and the cause will be remanded for such orders as may be necessary to enforce the decrees.

McAmis and Hale, JJ., concur.