EMMA HORTON KITTRELLE et al., Appellants, v.
PHILSAR DEVELOPMENT COMPANY et al., Appellees.—359 S. W. (2d) 837.

Western Section. May 29, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

W. C. Rodgers, Harold C. Streibich, Memphis, for appellants.

Al H. Thomas, Thomas, Shainberg & Halliburton and Taylor & Taylor, Memphis, for appellees.

AVERY, P. J. (W.S.). This cause comes to this Court from a decree of a Chancellor of the Chancery Court of Shelby County, Division II, Honorable Ceylon Frazer, denying a petition to reconsider his action in denying a Petition to Rehear theretofore filed in the above styled cause and which the Chancellor had by his decree dismissed the petition and denied the right of rehearing of the cause.

From the records and from the opinion filed by the Chancellor it appears that this cause was set for trial on June 14, 1961, and was heard during that day and perhaps the next day on oral testimony and the record be-

fore the Chancellor. At the close of the proof, and before the Chancellor had announced any decision whatever the parties, through their Counsel,. advised the Chancellor that they had come to an agreement and a consent decree would be entered.

The original bill was filed on July 22, 1960, by Emma Horton Kittrelle, Alfonso (Buddy) Horton, Aleen Horton Cole and Lucia Lee Miller against the Philsar Development Company, a Tennessee corporation and several personal defendants, including certain trustees etc. and involved a contract for the sale of real estate which is not necessary to mention further at this point.

Certain preliminary pleas were disposed of and the defendants answered and some of defendants filed both answers and cross-bill. These cross-bills were answered. The original bill was dismissed as to some parties and a consent decree was entered on July 17, 1961, which disposed of all the issues of certain features in the cause.

Final decree states in its first paragraph as follows:

"This cause came on to be heard on the entire record in this cause, and upon all the testimony in this cause (the introduction of testimony having been completed) and before the Court rendered a decision it was announced to the Court by counsel that the parties in this cause had compromised and settled the matters and things in controversy upon the terms and conditions as stated hereafter in the decree, and the Court inquired of all counsel if the settlement as related to the Court met with the approval of all parties, as twice before during the trial it was announced that the matter had been settled

when actually the parties were not in agreement, and it appeared to the Court after inquiring of all counsel that the settlement was approved by all, and that when a final decree was drafted pursuant to the settlement as dictated to the Court, counsel for defendants, Lawrence Bernard Matlock, Trustee and Sam Burns, would not consent to same, and the Court feels that the complainants and defendants, Philsar Development Company and T. J. Hammond, should not be deprived of their settlement, and the Court is agreeable to entering a decree pursuant to the agreement if the defendants, Lawrence Bernard Matlock, Trustee and Sam Burns, rights are not prejudiced in any way.''

The decree then continues to set out what purports to be the full agreement and makes same the decree of the Court. This decree shows it was entered on July 17, 1961.

The original complainants, Lucia Lee Miller, Aleen Horton Cole, Buddy Horton and Emma Kittrelle did on July 16, 1961, the day before said decree was entered prepare the following letter dated and addressed as follows:

''4617 Benjestown Rd.,
''Memphis, Tenn.
''July 16, 1961.

''Hon. Judge Ceylon B. Frazer,
''Shelby County Court House

''Dear Sir:

We, the Horton heirs, wish to withdraw the so-called settlement between the Philsar Development Co. and ourselves.

"These are the reasons we wish to withdraw:

"The original deed for the Wellford tract of land calls for one thousand nine hundred and forty acres (1940), this is the land in question. We have paid tax on this land since 1872 which has been (been) very sacrificial on our part. During the high water years the land caved in the river leaving us seventeen hundred and forty acres at one time and now it calls for sixteen hundred and forty-two acres. Now the lost acreage has made up on about a three hundred acre sandbar as the description of land calls for to the rivers edge. This land the Philsar Development Company calls increason but it is only our loss land made up in another section.

"We only agreed to sell Mr. Philip Belz or Jack Belz only five hundred acres of land (500A) at one hundred and twenty five dollars per acre ($125) not knowing the exact amount of land due to decreasion and increasion, in the option was stated that if the five hundred acres were not available out of the Buddy Horton and Emma Kittrelle's part of the land they would have to refund one hundred and twenty-five dollars per acre to Philsar Development Company. Therefore we do not want to tie up our land and ask that you do not enter any order or decree binding our land nor giving option.

> "Oblige
> "Lucia Lee Miller
> "Aleen Cole
> "Buddy Horton
> "Emma Kittrell."

That letter was apparently delivered to the secretary of the Chancellor the day it was written. But the decree that had been drafted came into his hands before he ever got the letter, he having been out of the city or on vacation,—the Court taking its summer vacation at that time, but on receipt of the decree from the Clerk and Master or from others, he signed it and it was entered as heretofore stated, on the 17th day of July 1961. Entry of this decree brought a petition to rehear, in which it was alleged that they were entitled to a rehearing because they had withdrawn their agreement by this letter prior to the draft and entry of any decree, and if the decree had been drafted it had not been submitted to them. Excuse for changing their minds is set out therein.

This letter came into the hands of the Chancellor after he had signed and handed the decree in for entry, and on July 18, 1961, he addressed a letter to all the parties and to their respective attorneys in which he said:

"Gentlemen:

"Attached is copy of letter received by me this morning and shown to be signed by Lucia Lee Miller, Aleen Cole, Buddy Horton and Emma Kittrell. You will note that in the letter I am requested not to enter any order to decree 'binding our land nor giving option'. As you know, the decree in this cause was entered on Monday, July 16th.

"Yours very truly,
Chancellor."

The Chancellor filed a Memorandum on August 24, 1961, in which he fully set out the facts in connection

with the matter, and in this Memorandum he quoted the rule of the Chancery Court of Shelby County with respect to "Petitions for Rehearing", as follows:

"Rule No. XXII:

"(a) If a rehearing of any decision is sought, a Petition for Rehearing must be presented within ten days after the decision whether or not an order or decree has been entered thereon. Before being presented to the Court, copies of Petitions for Rehearing, with any Brief in support thereof, must be furnished to adversary counsel, who are accorded five days within which to answer.

"(b) Petitions for Rehearing and Answers shall be filed and delivered to the Court without argument if the Court desires to hear oral argument, counsel will be so notified."

In that Memorandum the Court went fully into just what had occurred to that date in this cause, and ordered the petition to rehear stricken.

Petition to rehear,—that is the petition filed after the degree was entered on July 17, 1961 was filed on August 16, 1961, which was exactly 30 days from the entry of the decree or entry of the "decision" as we have construed the meaning, which would have complied with T. C. A. sec. 27-201 but would have been 20 days late under the rule above quoted.

A pleading, "Petition to Reconsider" was filed on August 28, 1961, by the same parties who filed the "Petition to Rehear". This petition to reconsider states in its first paragraph the following:

"Petitioners, through their solicitor of record, most respectfully petition this Honorable Court to reconsider his action in heretofore denying and striking their petition to Rehear, because, this is contrary to the long recognized and well established principles of equity, and, particularly so, in that * * *"

The foregoing rule is promulgated in accord with T. C. A. sec. 27-201 titled "Motion for rehearing or new trial" and containing the following provisions:

"A rehearing or motion for new trial can only be applied for within thirty (30) days from the decree, verdict or judgment sought to be affected, subject, however, to the rules of court prescribing the length of time in which the application is to be made, but such rules in no case shall allow less than ten (10) days for such application. The expiration of a term of court during said period shall not shorten the time allowed."

Section 27-201 T. C. A., Section 27-301 and T. C. A., sec. 27-312 must be construed together in order to properly determine the authority of a lower Court over its judgments and decrees or decisions, while the case is before it. See Johnson v. Johnson, 40 Tenn. App. 655, 292 S. W. (2d) 472, and cases there cited.

Sec. 27-301 T. C. A. is as follows:

"Right of appeal in chancery cases.—Either party dissatisfied with the judgment or decree of the circuit or chancery court, in a matter of equity tried according to the forms of the chancery court, may appeal to the Supreme or Appeals Court, and have

a reexamination, in that court, of the whole matter of law and fact appearing in the record."

Sec. 27-312 is as follows:

"Time for filing appeal and bond.—When an appeal in the nature of a writ of error is prayed from a judgment or decree of an inferior court to the Court of Appeals or Supreme Court, the appeal shall be prayed and appeal bond shall be executed or the pauper oath taken within thirty (30) days from the judgment or decree of the court, but for satisfactory reasons shown by affidavit or otherwise, and upon application made within the thirty (30) days, the court may extent the time to give bond or take the oath, but in no case more than thirty (30) days additional. * * *"

Looking back again to the rules adopted by the Chancery Court of Shelby County and quoted hereinabove containing the word "decision" it is insisted by counsel that the word "decision" means a judgment or decree or entry of some character on the minutes of the Court.

In 14 Am. Jur. page 347, section 131 under the heading "Opinions and Reports of Decision", it is said.

"While the terms 'opinions' and 'decisions' are often confounded, there is a wide difference between them. A decision of the court is its judgment, while the opinion represents merely the reasons for that judgment. While the opinion may not override its order, it may be looked to as a guide to construction when the meaning of the order is uncertain, since the meaning and effect of a judicial opinion depend upon what was under consideration by the

court and was being discussed by the writer of the opinion."

The word "decision" is variously defined in different courts and jurisdictions over the earth. 1 Bouv. Law Dict. Rawles Third Revision, p. 793, gives an explanation of how the word is regarded in different Courts over the land. The first sentence, however, in the meaning by Bouvier of this word is as follows:

"A judgment given by a competent tribunal." It further states, however:

"This word is variously defined. It is said that the decision of a court is its judgment; its opinion is the reason given therefor or the views of the judge in relation to a certain subject. The two words are sometimes used interchangeably. The judgment is recorded upon its rendition, and can be changed only through an application to the court. The decision is the property of the judges, subject to modification until transcribed in the records. The term decision is held to be a popular and not a technical word and to mean little more than a concluded opinion. It does not by itself amount to judgment or order as used in * * * It is an exercise of a consultative jurisdiction and is not appealable.

"The word decision includes: Dismissal of an action for insufficiency of evidence; dismissal of appeal; the findings of the court upon which a decree or judgment may be entered; an order of a probate court classifying a demand against the estate; a subsequent order vacating it and relegating the demand to a different class.

"It is, among other things, an order determining the judgment to be entered. It has a broader significance than judgment; * * * it has been said that 'in an abstract sense there is a shade of difference between the import of the word 'decision' and the word 'judgment'; the former is the resolution of the principles which determine the controversy; the judgment is the formal paper applying them to the rights of the parties.' As used in a statute characterizing the findings of fact and conclusions of law as a 'written decision' it means something which must precede the judgment and upon which it is entered.''

See Words and Phrases, permanent edition Vol. II under heading ''Decisions of Court'' for other definitions.

■ Assuming, however, that the word ''decision'' as used in the above quoted Rule No. XXII of the Rules of the Chancery Court of Shelby County, is based upon the above referred to Section 27-201 of T. C. A. wherein the words are used ''from the decree, verdict or judgment sought to be affected;'' we must, therefore, give the definition to the word ''decision'' to be that of a decree, verdict or judgment and our interpretation of that rule and the word used therein ''decision'' is to that effect. It is noted, however, that said section provides that the several courts may prescribe their own rule with respect to the time the motion for rehearing or a new trial shall be filed, and it specifically provides that such rule ''in no case shall allow less than ten (10) days for such application.''

On August 31, 1961, the Chancellor filed his Memorandum on the Petition to Reconsider. In this Memorandum

on the Petition to Reconsider the Chancellor quoted from that petition a paragraph as follows:

"3. Your petitioners, through their said solicitor, are not unmindful of Rule XXII, but are in a quandry in this particular instance, by reason of the fact, that this Honorable Court made no 'decision' in this matter, and these petitioners had already withdrawn their consent to the so-called 'Consent Decree', before its entrance. It is respectfully submitted they should not be bound on a mere tentative proposal of settlement announced, in general terms, where it was manifest that the terms or exact basis of the settlement between the parties would have to later be agreed upon, it being necessarily implied that the terms thereof would have to be satisfactory to both parties, leaving the matter open for a disagreement and rejection."

In this memorandum the Chancellor referred to his memorandum on the petition to rehear and said "that the consent of the petitioners was not withdrawn prior to the entry of the decree complained of." In this memorandum opinion he directed that for the reasons set out therein an order would be entered in accordance with the memorandum on the Petition to Rehear filed August 24, 1961.

On September 18, 1961, the Chancellor entered an order by which he disallowed the Petition to Rehear and the Petition to Reconsider based upon the respective memorandum opinions he had theretofore filed. In this decree on these two petitions, after reciting the filing thereof, it is said:

"It is therefore, ordered, adjudged and decreed, that complainants' 'Petition to Rehear', filed herein on the 16th day of August, 1961, be, and the same is hereby denied and stricken from the record.

"It is further ordered, adjudged and decreed that the 'Petition To Reconsider', filed herein on August 28, 1961, be, and the same is hereby denied and stricken from the record.

"To all of which actions of the Court the complainants except and pray an appeal to the Court of Appeals, Western Division, at Jackson, Tennessee, which is granted upon their giving the usual appeal bond of $250.00."

That order or decree further recites the fact that the complainants moved the Court for an appeal from the final decree entered in the cause on July 17, 1961, and for the right to perfect their appeal by filing the proper appeal bond to have prepared, filed and incorporated as a part of the record of the transcript of evidence heard etc. in the cause.

The Court denied such appeal, stating that the time for such appeal from that decree had expired more than thirty days since the entry of said decree on July 17, 1961. Exceptions were taken to the action of the Court.

In that decree the complainants who had filed these Petitions to Rehear and later to Reconsider were allowed thirty days in which to prepare a "wayside bill of exceptions" and to file their appeal bond and transcript of proceedings on the hearing of the motion to reconsider. Later the time for filing the appeal bond was extended

thirty days as provided by law and additional sixty days in which to file the wayside bill of exceptions.

The original wayside bill of exceptions was filed, under orders of the Court, and it is the original wayside bill of exceptions, together with the original exhibits to the same, now before this Court, and this wayside bill of exceptions begins on page 80 of the record and eight typewritten pages thereof contains what is described as "Transcript of Proceedings on June 16, 1961." This transcript contains a statement that this settlement is a compromise agreement entered into by the parties on the following basis, and after the word "basis" is a colon, and counsel for the parties then begin to state the basis for this compromise settlement and the decree to be entered thereon.

Suffice it to say that through this proceeding every phase of the agreement which had been reached by the parties was gone into definitely before the Court in the presence of all the parties and their attorneys. As the attorneys proceeded to state what the compromise agreement was, the Court would inquire from time to time just what the respective statements meant and they were made very clear. The Court, after going through each phase of the compromise agreement, then stated:

"Let this record show further that in this courtroom at the present time are all the complainants who have heard that which has been dictated as it was dictated, together with Mr. Thomas representing Philsar Development Company and Mr. Hammond, Mr. Henry Beaty representing all the Complainants, Mr. Robert L. Taylor, likewise associated

with Mr. Thomas, representing Philsar Development Company; is that correct?

"MR. TAYLOR: Yes, sir.

"THE COURT: All right, you may have to polish this up to some extent but I see no reason at the present time, since the parties are sui juris and I know of no protective rule of law that is being violated by this agreement, and, as I say, I know of no reason why the agreement should not be incorporated in a decree of the Court and entered as such. Is there anything further, gentlemen?

"MR. TAYLOR: No, Your Honor."

So on the 30th day after that conversation took place on July 16th by the agreement made in open Court, these original complainants lodged the letter hereinbefore copied, and to which Chancellor's attention was not called until after the decree based upon the agreement, as set out in the wayside bill of exceptions, had been signed by him.

It should be said that this record has a complete transcript of the decree entered on July 17, 1961, and that decree is signed first "Ceylon B. Frazer, Chancellor", and below the Chancellor's signature appears the word "Approved": immediately following that, it is signed Henry M. Beaty, Jr., Solicitor for Complainants, Al H. Thomas, Solicitor for Defendant, Robert L. Taylor, Solicitor for Defendant and W. C. Rodgers, Solicitor for Defendant."

It should be said just here that the Honorable W. C. Rodgers who signed that decree as attorney for the defendant was representing the two defendants which had

excepted to the decree and had prayed an appeal in the first instance, and at this time represented none of the original complainants. The approval of that decree was by Mr. Henry M. Beaty, Jr., solicitor for complainants, who, the record shows, was the solicitor for complainants in the filing of the original bill, along with others.

It should be further said here that there is much said in the brief and particularly in what is determined "statement of facts" that is entirely outside the questions pending before this Court. However, the errors assigned in substance are as follows:

That the Court erred in refusing to receive and judicially consider the Petition to Rehear on the grounds that Rule XXII requiring such petitions to be filed within ten days, had reference to "decision" of the Court. Because the decree was signed by the Chancellor and entered after the letter was alleged to have been filed with his secretary. That the Court erred in not setting aside the decree entered on the minutes which he had signed without the knowledge that the letter had ever been written, when said letter was available and cited the fact that the original complainants had withdrawn their consent agreement. That it was error because the petitioners had not seen the final decree. It was error because the letter was legally in the possession of the Chancellor. Because the Court erred in assuming that the original solicitors who had been present and stated an agreement and settlement had been reached, was still representing the partis at the time the decree was approved, and that the decree incorporated new matters which had not been agreed upon.

We know of no reason why the Chancellor should have granted the appeal. He properly refused to grant an appeal at that time from the original decree. The time had expired in which to file a Petition to Rehear, and he had so held. The difference between the Petition to Rehear and the Petition to Reconsider is not of substance in this matter. The Chancellor did not necessarily have to exercise any discretion whatever, as we understand this record. The Chancellor had by his memorandum, held the "Petition to Rehear" "a stranger to the family of pleadings in this cause", and if that be true, which we think it is, the "Petition to Reconsider" more so, and to us it is a stranger to any procedure that we find mentioned in any text on equity jurisprudence as sought in the manner it is undertaken to be used in this proceeding.

Consent decrees are encouraged by the Courts for many reasons, unless the parties to the cause, or at least some of them are incapable of exercising binding consent. The reasons for such consideration by the Courts are obvious. Many times it ends litigation sooner than would be possible otherwise. It affords to the Courts satisfaction of knowing that the parties have settled their own lawsuits or have settled their own differences, and so the Courts are generally favorable to such action on the part of the people who are sui juris. Section 619, Gibson's Suits in Chancery, 5th Edition, Vol. 1, under the heading "Consent Decrees" provides as follows:

"A decree is frequently made by consent of parties. In such a case, the Court does not inquire into the merits or equities of the decree, nor whether it is sustained by the pleadings. The only questions for the Court to determine are: (1) Are the parties ca-

pable of binding themselves by consent; and (2) whether they have consented, or do now consent, to the proposed decree. These two facts appearing, the Court orders the decree to be entered provided that it shows upon its face that it is a consent decree. If it does not so show upon its face it is not a consent decree. * * *''

We have shown in this opinion that the Court fully understood the agreement which had been reached, which had been consented to by the parties; that the agreement was fully stated in the presence of the Court and all of the parties and that the Court made the inquiry which we have quoted hereinabove, before he directed the entry of such a decree.

Furthermore, the same Section of Gibson's Suits in Chancery further provides:

''A decree by consent is in the nature of a solemn contract; and is, in effect, an admission by the parties that the decree is a just determination of their rights upon the real facts of the case, had such been proved. As a result, such a decree is so binding as to be asolutely conclusive upon the consenting parties, and it can neither be amended, or in any way varied, without a like consent, nor can it be reheard, appealed from, or reviewed upon a writ of error. The one only way in which it can be attacked, or impeached, is by an original bill alleging fraud in securing the consent.''

The above quotation is approved as late as 1952 in the case of Clinchfield Stone Co., Inc. v. Stone et al., 36 Tenn. App. 252, 262, 254 S. W. (2d) 8. A part of the above

quotation in said Clinchfield Stone Co. v. Stone is italicized for emphasis and the Court there then said:

"In numerous decisions the appellate courts of this state have recognized and followed the foregoing rule regarding consent decrees. Williams v. Neil, 51 Tenn. 279; Musgrove v. Lusk, 2 Tenn. Ch. 576; Jones v. Williamson, 45 Tenn. 371; Boyce v. Stanton, 83 Tenn. 346; Lindsay v. Allen, 112 Tenn. 637, 82 S. W. 171; Kentucky-Tennessee Light & Power Co. v. Beard, 152 Tenn. 348, 277 S. W. 889; Coley v. Family Loan Co., 168 Tenn. 631, 80 S. W. (2d) 87; Barretsville Bank & Trust Co. v. Bolton, 182 Tenn. 364, 187 S. W. (2d) 306."

Clinchfield Stone Co. v. Stone, supra, 36 Tenn. App. page 263, 254 S. W. (2d) page 12, further refers to several of the old cases and states that:

"In Kentucky-Tennessee Light & Power Co. v. Beard, supra [152 Tenn. 348, 277 S. W. 889, 890], it was held that leave to amend after entry of consent decree was properly denied, the court saying:

" 'The Court of Civil Appeals was of the opinion that petitioner was bound by the consent decree which could only be impeached for fraud, and was not open to reconsideration by the court. In this conclusion we think the Court of Civil Appeals was correct.

" 'In Williams v. Neil, 4 Heisk, 279 [51 Tenn. 279], it is said: "It is well settled that there lies no appeal or rehearing from a decree by consent, and such decree can only be impeached by an original bill in the nature of a bill of review, when it has been ob-

. tained by fraud or imposition. This is the result of all the authorities on this question." ' "

In the cause now before us it is shown by this wayside bill of exceptions that the Court had heard all the proof in this cause and that during the process of hearing this proof it had been mentioned quite a few times that the parties had reached an agreement, but when statements would begin to be made to the Court there would be some objections raised, and finally after all the proof was in, the parties in conference reached an agreement. And as hereinbefore shown this agreement was stated to the Court and the Court made specific inquiry as the agreement was being announced and was being taken in shorthand by the court reporter, which has been transcribed and constitutes a great part of this wayside bill of exceptions. The Court, therefore, was exceedingly careful in determining that all parties had agreed.

Furthermore, there is not one word in the letter which was addressed to the Court and forwarded to the secretary of the Chancellor and which he did not see until after he entered the decree or ordered it entered, that the attorneys for those parties who were employed and who had tried the case from beginning to end, had in any wise been discharged as their attorneys. It is true that counsel who signed the petition for rehearing is a different counsel, but even in the petition it is not said that the attorney who had announced the agreement and stated it as shown by this record, did not then have authority to bind his clients. So it would seem that counsel who is undertaking to represent these parties at this time in these rehearing petitions has undertaken to hold on to that contractual relationship of his clients with their attorneys and at the

same time present something to the Chancery Court in the way of a sort of innuendo of fraud on the part of somebody in connection with the whole matter, and more particularly with respect to the entering of this consent decree. Again in Clinchfield Stone Co. v. Stone, supra, the Court in that opinion prepared for it by Judge Howard, further said:

"It is apparent to us that the foregoing construction of the decrees was correct, as all of the proof showed that the defendant's officials were fully informed of the terms of the decrees prior to and at the time they were entered. * * *"

We know of no better statement than this to be applied to the facts now before us. It does appear in this record that all of these parties, who are adults, and who were represented by worthy counsel in the cause from the very filing of the petition until the closing of the proof and announcement that a consent decree had been entered, and that the essence of that decree had been stated to the Court, and the Court said, "All right you may have to polish this up to some extent etc.," it could have been entered as stated and would have been perfectly in order to have done so. However, the parties themselves, and apparently at the suggestion of counsel who now represents these parties, and who represented other parties only at the hearing, desired to see a copy of the final decree, all of which was approved by him for his clients that he represented on that date.

In the case of McClister v. Milligan, 1 Tenn. App. 258, in an opinion by the late Judge Faw of this Court there was under consideration an appeal granted from a petition to rehear. After hearing of the petition the Chan-

cellor denied it and dismissed the petition and granted an appeal from his action dismissing that petition to rehear. In that opinion at page 261 Judge Faw, speaking for the Middle Section of this Court, said:

"We agree with the contention of appellee that the decree which the assignment of error purports to challenge was not brought up for review by the appeal; in fact, the appeal in this case did not bring up any matter open for consideration by this court. The refusal of the trial court to grant a rehearing is not open to consideration in the appellate court. Boesch v. Graff, 133 U. S. [697], 699 [10 S. Ct. 378], 33 L. Ed. [787], 788.

"An application for a rehearing is 'one addressed to the discretion of the court and one in which the decision of the court in granting or refusing it is not subject to review in the appellate court'. Steines v. Franklin County, 81 U. S. (14 Wall.) 15, 22, 20 L. Ed. 846, 848.

*     *     *     *     *     *

"The case of Steines v. Franklin County, and Buffington v. Harvey [95 U. S. 99, 24 L. Ed. 381], supra, were cited with approval by Judge Cooper in Galloway v. Dunnington, 10 Lea, 216, 218, in support of the statement there made that 'a rehearing in equity is not a matter of right, but rests, in the discretion of the court,' and that 'no appeal lies from an order refusing a rehearing.' The court added (in Galloway v. Dunnington) that 'the rehearing meant in

these rulings a rehearing upon the record as it existed at the first hearing.' "

This McClister v. Milligan case is in point, in that the Court below denied the defendant the right to appeal from the original decree, but permitted the appeal only from the Court's refusal to grant an order of rehearing or reconsideration.

It was further said by Judge Faw, 1 Tenn. App. at page 262:

"The order of the chancery court refusing to set aside an appealable decree is not appealable; the appeal should have been taken from the original decree. The mere negative action of a court of equity in declining to disturb its first decision is not reviewable. 2 Ency. of Pl. & Prac., p. 109."

The result is that we are unable to see any reason why these parties who petitioned for this rehearing and who thereafter petitioned for a reconsideration of the order of the Court on the petition to rehear are entitled to any relief whatever.

All the assignments of error are overruled, the appeal dismissed and the judgment of the lower Court is affirmed, the cost adjudged against all of the former complainants and their sureties on their cost and appeal bonds.

Decree will be entered here in accord with this opinion, and the cause will be remanded to the Chancery Court of Shelby County, Tennessee, for any further, other and necessary action to be taken in same. The

cost incurred in that Court hereafter will be taxed in the final decree of that Court.

Bejach, J., concurs.

Carney, J., dissents.

Carney, J. (dissenting).

In my opinion His Honor the learned Chancellor was in error in refusing to set aside the consent decree entered on July 17, 1961. The evidence heard by the Chancellor upon the original trial below is not preserved in the record but from the pleadings the following facts appear:

The complainants, Emma Horton Kittrelle, Buddy Horton, Lucia L. Miller and Aleen Horton Cole, are colored people. As the surviving children and grandchildren of J. M. Horton they were the owners of something over 1900 acres of land lying in the northwest portion of Shelby County, Tennessee, most of which was located between the Chickasaw Bluff and the Mississippi River. Originally this property amounted to 3000 acres and a considerable portion of which appears to have been lost by the erosion of the Mississippi River. The land had been in the complainants' family since 1873.

On October 1, 1959, pursuant to a contract dated June 17, 1959, the complainants executed a deed to the defendant, Philsar Development Company, which supposedly conveyed 500 acres of bottom land together with all present and future accretions at a price of $125.00 per acre for the old land (non accretions) or a total of $62,500 payable in deferred payments. The deed expressly reserved 500 acres of bottom land to the grantors, Lucia L. Miller and Aleen Cole. Further, the deed reaffirmed an option

agreement made in the contract dated June 17, 1959, whereby the defendant, Philsar Development Company was given the first option to purchase any part of the 500 acres which complainants Aleen Cole and Lucia Lee Miller might elect to sell.

The contract further provided that in the event the land deeded to the Philsar Development Company surveyed out less than 500 acres the purchase price of the land should be reduced by $125.00 per acre.

On July 22, 1960, the complainants filed the original bill in this cause averring that the deed of October 1, 1959, had been made prior to a survey of the property in 1960; that a survey revealed that the defendant, Philsar Development Company, was actually receiving 1220 acres of land under its deed of which 675 acres were old land and 546 acres represented accretions. The bill further alleged that all the parties had erroneously failed to consider some 200 acres of land which belonged to the complainant, Emma Horton Kittrelle, and that the defendant was receiving at least 175 acres of old land more than the parties had intended that it should receive. The bill also referred to the option to purchase the remaining 500 acres allotted to Lucia Lee Miller and Aleen Cole. A number of encumbrancers were impleaded. The bill prayed that the Court construe the contract of sale, the warranty deed, and determine the rights of all the parties.

At least twice during the course of the trial it was announced that the matters in controversy had been settled and then it appeared that the parties were not in agreement.

Finally on June 16, 1961, solicitor for the defendant announced in open court to the Chancellor that the parties

had agreed to settle the matters in controversy. Thereupon he related to the Chancellor the various items of the settlement which covered some seven pages in the record.

Among the terms of the agreement mentioned in the oral statement of counsel were:

(1) A surveyor was to measure 87.5 acres and Philsar Development Company was to reconvey this property to "complainants." Later the decree recited the 87.5 acres were to be deeded to Lucia Lee Miller and Aleen Cole.

(2) The first option to purchase or right of refusal set out and described in the contract and in the warranty deed was to be void.

(3) The complainants were relieved of their obligation to pay T. J. Hammond a 10% real estate commission on any future sales of their property.

(4) The defendant was granted an option for 21 years to purchase any portion of the 587.5 acres retained by the complainants. This option expressly provided that anytime during the 21 years Philsar could demand upon fifteen days written notice that each party select an appraiser who in turn would select a third appraiser to set the value of the property and Philsar would have the unequivocal right to purchase at the price determined by the three appraisers.

Further, the option provided that the exercise of the option to purchase any portion of the 587.5 acres would not terminate its right to purchase any of the remaining property during the 21 year period.

The complainants were required to complete the transaction within fifteen days after the appraisers announced

the value they had set upon the property. Upon suggestion of the Court solicitors for complainants and defendants agreed to make the time for closing the transaction thirty days instead of fifteen days.

(5) Further, the defendant, Philsar Development Company, was granted an additional option for a period ending 21 years after the death of the complainant, Emma Horton Kittrelle, in which to purchase any of the other Horton lands owned by any of the complainants under the following conditions; namely, that Philsar Development Company would have the refusal of any of the other Horton lands that the complainants wanted to sell at the same price and under the same terms at which complainants or their heirs sought to sell to some third person.

The pleadings indicate that some of the Horton lands lie up on top of the Chickasaw Bluff east of the land sold to the defendant, Philsar Development Company, and were not involved in the first contract and deed. The Philsar Development Company made no claim to an option to purchase these lands prior to the settlement announced in open court by solicitor for defendant. It was further announced that the exercise by Philsar to purchase or refuse any one or more of such tracts would not terminate its option; i. e. within 21 years after the death of Emma Horton Kittrelle who is still living.

(6) Aleen Horton Cole agreed to subordinate a $9,000 mortgage which she held against Emma Horton Kittrelle in favor of Philsar Development Company.

Finally the statement of the agreement concluded with the discussion concerning a hunting lease. We copy from the transcript the conclusion of his statement as follows:

"Further that the hunting club lease of August 1955 which was partly the subject of the controversy in Clause No. 61804 of the Chancery Court of Shelby County, Tennessee, is recognized by the complainants as being in full force and effect and now assigned to Philsar Development Company and that the complainants now recognize the lessee under said lease to be Philsar Development Company that no default exists thereunder, and that the terms and conditions, including the right of first refusal, as granted for the term of the lease, and any extension thereof, as provided for therein, is recognized as being in force and effect.

"THE COURT: Now, of course, that can only affect this 587.5 acres.

"MR. THOMAS: No, it affects the entire property. The lease covers the full 750 acres.

"THE COURT: Does it?

"MR BEATY: Yes, sir. It—(interrupted)

"THE COURT: I will change it and say it could not affect that property to which title is held by Philsar Development Company, because, certainly—(interrupted)

"MR. BEATY: It is a merger.

"THE COURT: (continuing) their right and possession of title as lessee would necessarily merge in the ownership of the property.

"MR. THOMAS: That the controversies between the Complainants and the Defendant, Sam Burns, and the Defendant, Lawrence Bernard Matlock,

Trustee, have not and are not adjudicated by this cause of action except as their rights might be affected by the terms of the settlement heretofore stated to the Court, and that the cause of action between the Complainants and the said Defendants, Sam Burns, and the Defendant, Lawrence Bernard Matlock, Trustee, is dismissed without prejudice.

"MR. THOMAS: If Your Honor please, I just want to suggest that the agreement and the decree provide that title to all of that tract of the Horton lands as shown on the survey of B. C. Harwell, with exception of the 500 acres reserved to Aleen Horton Cole and Lawrence Bernard Matlock, and the 87.5 acres lying immediately south thereof be conveyed to Philsar Development Company and that a metes and bounds description of said property will be incorporated in the decree.

"THE COURT: I have no objection to that, and I think further that you had better assure title to the 587 or whatever acreage it might be which lies north of the—(interrupted)

"MR. TAYLOR: Philsar Development Company.

"THE COURT: Philsar Development Company.

"MR. TAYLOR: To be in the two Complainants.

"THE COURT: What is that?

"MR. TAYLOR: To be in the two Complainants. We have no interest in it except that statement.

"THE COURT: I think the decree should show who owns that property myself.

"MR. TAYLOR: Well, he had an unrecorded deed that was signed.

"THE COURT: What was that?

"MR. TAYLOR: I think he has an unrecorded deed to accomplish that, but maybe he will want to.

"MR. BEATY: I believe, Mr. Thomas, we had better get a deed. I don't believe you can vest and divest title. I believe a deed would be better on that.

"THE COURT: I have no object to that, but I think it should be stated in this record who it was agreed by all parties to this cause owns the 587 some odd acres which will lie north of the revamped Philsar tract.

"MR. BEATY: I don't think there is any doubt that everyone here agrees that Aleen Horton Cole and Lawrence Bernard Matlock are to be the owners of that property. At least, my—(interrupted)

"MR. RODGERS: The decree recognizes that fact, or should recognize that fact.

"MR. BEATY: The decree recognizes that fact, but I think a deed from Emma Horton Kittrelle should be given, too. We will pay half the costs.

"MR. THOMAS: That the costs of this cause will be paid, one-half by the complainants and one-half by the Defendant, Philsar Development Company.

"THE COURT: All right, gentlemen.

"MR. BEATY: Mr. Rodgers hasn't been a party to the lease agreement but I have no objections.

"MR. RODGERS: I have no objections to it, if I understand it properly, and I am just going to wait until they submit the decree, but I believe they have taken care of me in it, as I understand the statement.

"THE COURT: Let this record show further that in this Courtroom at the present time are all the Complainants who have heard that which has been dictated as it was dictated, together with Mr. Thomas representing Philsar Development Company and Mr. Hammond, Mr. Henry Beaty representing all the Complainants, Mr. Robert L. Taylor likewise associated with Mr. Thomas, representing Philsar Development Company; is that correct?

"MR. TAYLOR: Yes, sir.

"THE COURT: All right, you may have to polish this up to some extent but I see no reason at the present time, since the parties are sui juris and I know of no protective rule of law that is being violated by this agreement, and, as I say, I know of no reason why the agreement should not be incorporated in a decree of the Court and entered as such.

"Is there anything further, gentlemen?

"MR. TAYLOR: No, Your Honor."

Apparently the complainants were never shown the decree which embodied the agreements as stated by solicitor for the defendant. On the same day that the decree was filed with the Clerk & Master the complainants filed a letter with the secretary of the Chancellor withdrawing their consent to what they term the "so-called settlement between the Philsar Development Company and ourselves."

The settlement was not reduced to writing at the time it was announced in open court. The provisions of the agreement are rather complex and far reaching. As I understand the agreement, after reading it several times, Philsar will have title to 587.5 acres of old bottom land plus title to 545 acres of accretions. In addition it will have the unqualified right to purchase any part of the remaining 587.5 acres of bottom land from time to time and at any time it desires in such amounts as it desires at a price to be determined by three appraisers. Further, as I understand it Philsar has the first right of refusal to purchase all the remaining Horton lands at any time during the life of Emma Horton Kittrelle and during a period of 21 years after her death.

I express no opinion as to whether this was a good settlement or a bad settlement. However, I don't think that the complainants should be bound by a consent decree which vitally affects their entire inheritance unless the record shows affirmatively that the complainants fully understood and voluntarily agreed to all of the terms of the settlement. I do not think the record affirmatively shows that the complainants fully understood and agreed to all of the terms of the settlement and for that reason the decree should have been set aside.

Although the complainants were sitting in the courtroom while solicitor for defendant made oral explanation of the terms of the settlement and although they had previously indicated to their solicitors of record that they had approved the settlement, yet we must remember that these were colored people and probably not too well versed in business affairs. Further, we must remember that the entire financial situation was at that time con-

siderably muddled and very probably the complainants under great stress and worry. They had already made deed to a tract of land which they thought contained only 500 acres of old bottom land plus accretions when in fact the defendant had received title to 675 acres of old bottom land and had only paid for 500 acres.

The settlement gave the complainants one-half of the 175 excess acres but in turn extended defendant's option to purchase remaining lands in two respects: First, the defendant received an unqualified option to purchase the 587.5 acres at a price to be determined by appraisers and second, received the first refusal on all of the remaining Horton lands for an unusually long time, namely 21 years after the death of Emma Horton Kittrelle.

I see no legal prejudice that can result to the defendant if the decree is set aside. I think much prejudice may accrue to the complainants if they are held bound to a contract which was not reduced to writing and which they may not have fully understood.

The decree was within the the breast of the Chancellor for a period of 30 days from and after its entry. His Honor the Chancellor could have waived Rule XXII of his Court and sustained the petition to rehear as a motion to set aside the decree or he could have set the consent decree aside on his own motion. Gibson's Suits in Chancery, 5th Edition, Section 614. I feel that he should have done one or the other and would therefore sustain the appeal and remand the case accordingly.