**Hazen KREIS and Robert A. Epperson**
**v.**
**VENTURE OUT IN AMERICA, INC.**
**Civ. A. No. 8299.**

United States District Court,
E. D. Tennessee, N. D.

Nov. 27, 1973.

Jack B. Draper, Knoxville, Tenn., for plaintiffs.

A. Paul Cadenhead, Atlanta, Ga., Hugh W. Morgan, John B. Rayson, Kramer, Dye, Greenwood, Johnson, Rayson & McVeigh, Knoxville, Tenn., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. TAYLOR, District Judge.

This case originated in the Chancery Court of Knox County, Tennessee and

was removed to this Court by the defendant on the basis of diversity of citizenship. Plaintiffs seek specific performance of a contract or alternatively damages for an alleged breach by the defendant.

Plaintiffs are former stockholders, directors and officers of the Tennessee corporation. By means of a written agreement executed on April 26, 1971, to become retroactively effective March 11, 1971, plaintiffs sold their capital stock interest in the defendant corporation consisting of 1,020,000 shares to the defendant. In exchange for such capital stock, plaintiffs bargained for and received of the defendant valuable consideration, including the following:

"As consideration for the aforesaid sale, assignment and transfer of the share of Kreis and Epperson in Venture Out, Venture Out agrees:

"(a) To convey in consideration for the transfer of stock hereunder, by warranty deed containing full covenants of title certain property on the eastern side of Highway AIA in St. Lucie County, Florida, as described on Exhibit "C" hereto attached and incorporated herein by reference. Such conveyance will be made subject to existing easements and taxes for the year 1971. Said property consists of two (2) tracts, one fronts 350 feet on the eastern side of the highway and extends in an eastern direction to the ocean (Katz property), and the other fronts 1,606 feet, more or less, on the eastern side of the highway, adjoining the Katz property on the south but extends back only 58 feet on the south and 112 feet on the northern end together with a strip 2 feet in width which extends from the highway to the ocean. Kreis and Epperson agree to assume $50,000.00 of the existing mortgage in favor of A. Paul Young, et al, as to the second parcel with the understanding that Venture Out will pay, or cause to be paid before default all amounts due, or becoming due, as to the remaining amounts owing with

respect to said mortgage to the end that Kreis and Epperson will suffer no jeopardy as to a foreclosure of the mortgage on account of a default therein.

\*      \*      \*      \*      \*      \*

"(c) With respect to St. Lucie County properties, Kreis and Epperson, their heirs and assigns, shall be entitled to tap onto the water and sewer facilities of Holiday Out in America at St. Lucie, Inc. ("Holiday Out"), so as to serve the properties conveyed to them with both sewer treatment facilities and water service upon the specific condition that should any modification be required in the opinion of Venture Out to the sewer plants in order to accommodate the combined needs of the transferred lands and those of Holiday Out, the cost of such accommodation, including all engineering, shall be borne exclusively by Kreis and Epperson, their heirs and assigns, and under no circumstances will either the cost of operation or improvement of the sewer plant become an additional expense of Holiday Out. Kreis and Epperson shall pay for all water and sewer services received after a tap is made hereunder."

Plaintiffs contend that the boundaries of one of the tracts conveyed to them by the defendant was purposely designed by the parties in such a way as to landlock what was described by the witnesses as the Slifka property. This parcel is contiguous to Tracts Nos. 1, 2 and 3, which was all of the property purchased by plaintiff from the defendant and is shown on the map filed as Exhibit No. 1. Subsequent to the sale, plaintiffs purchased the Slifka property. Plaintiffs contend that the water and sewer tap rights are of great value and that they made subsequent developments in reliance upon their belief that defendant was obligated to permit them to tap onto defendant's sewer and water facilities. Notwithstanding their reliance, defendant has refused and continues to refuse

484

such tap. Plaintiffs seek specific performance of what they claim was their agreement with the defendant to tap such facilities or in the alternative for damages for defendant's refusal.

Defendant contends that the contract sued upon does not obligate it to permit the plaintiffs to hook up to the water supply lines to serve the Slifka property. Defendant, however, is agreeable to plaintiffs' hooking up to the water and sewage lines to serve Tracts Nos. 1, 2 and 3 shown on Exhibit 1, in accordance with the agreement made April 26, 1971.

Defendant contends further that its sewer plant cannot be modified, as the term is used in the agreement, to accommodate the combined needs of defendant and plaintiffs' proposed development of 383 condominium apartments.[1]

The material issue, as formulated in the pre-trial order, is:

Does paragraph 5 of the agreement sued upon obligate the defendant to permit the plaintiffs to tap on the water and sewer facilities of Holiday Out in America at St. Lucie, Inc., so as to serve a proposed development consisting of 383 condominium apartments to be located in part upon lands conveyed to plaintiffs by defendant, and in part upon lands acquired by the plaintiffs from others?

The answer to this question involves the construction of the contract between plaintiffs and the defendant, particularly Sections 5(a) and 5(c). Plaintiffs' attorney has outlined the pertinent rules to be followed by the Court in reaching a decision on this point. One rule of construction, which is designated as a cardinal one, is to give effect to the intention of the parties in light of all the surrounding circumstances. City of Memphis, Tennessee v. Ford Motor Co., 304 F.2d 845, 849 (6th Cir. 1962).

The language of the instrument and intention of the parties control. A. J. Armstrong Co. v. Lincoln Finance & Thrift, Inc. et al, 291 F.Supp. 1008, 1010 (E.D.Tenn., 1968). As a general rule, the Courts cannot only look to the language of the contract but must ascertain, if possible, the intention of the parties and make a construction that is fair and reasonable. Real Estate Management, Inc. v. Giles, 41 Tenn.App. 347, 293 S.W.2d 596 (1956).

If the language of a contract is contradictory, obscure, and ambiguous and its meaning doubtful so as to make it the subject of two constructions, one of which makes it fair and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such that reasonable men would not execute, the interpretation which makes a rational and probable agreement must be preferred. Commerce Street Company v. Goodyear Tire and Rubber Co., 31 Tenn.App. 314, 329–330, 215 S.W.2d 4 (1948). However, when the language is plain, simple and unambiguous, it is the function of the Court to enforce it as written notwithstanding that it may contain terms considered harsh and unjust. Petty v. Sloan, 197 Tenn. 630, 277 S.W.2d 355 (1955). If the language is plain and unambiguous, parole evidence may not be received to vary or change its terms. Pettyjohn v. Brown Boveri Corp., Tenn.App., 476 S.W.2d 268, 271 (1971); 30 Am.Jur.2d, Evidence, Section 1069.

Furthermore, a person who has obligated himself by contract may not be excused from performance because of unforeseen difficulties, unexpected expense or because it is unprofitable. Clinchfield Stone Co. v. Stone, 36 Tenn.App. 252, 254 S.W.2d 8 (1952).

The evidence shows that both at the time of negotiations and at the time of

1. The evidence indicates that these units will be constructed on the south end of the property now owned by plaintiffs. The evidence further shows that approximately 90% of this construction will occur on the lands purchased by plaintiffs from Slifka with only 10% occurring on the lands conveyed under paragraph 5 of the contract.

execution of the contract each party was represented by counsel. Plaintiffs contend, and the proof clearly reflects, that representatives of the defendant knew that plaintiffs were to negotiate for the Slifka property and that their purpose in obtaining Tracts 1 and 2 was to landlock the Slifka tract, presumably in order to prevent any other party from buying it. Defendant's representatives also knew that plaintiffs contemplated condominium development of the properties which would require water and sewer facilities. Plaintiffs, therefore, argue that it was the intention of the parties that defendant furnish water and sewer services at the cost of plaintiffs despite the increased burden, for if the contract is construed otherwise, their right to tap on for only those properties conveyed in paragraph 5(a) would be meaningless.

If this was the intention of the parties, there was nothing to prevent the inclusion of a clause in the contract to the effect that defendant would likewise service the Slifka tract if and when acquired. It is not the prerogative of the Court to write a new contract for the parties and in order to sustain the contention of plaintiffs, this would have to be done.[2]

Applying the foregoing principles to the facts under consideration, the Court must conclude that Sections 5(a) and 5(c) are clear and unambiguous and that under those sections and the contract as a whole, defendant is not required to permit plaintiffs to tap its water and sewer facilities except to serve Tracts 1, 2 and 3 as shown on Exhibit 1. Defendant is not required to permit a tap to serve the property described in the record as the Slifka property.

Accordingly, it is ordered that plaintiffs' action be, and same hereby is, dismissed.

2. Paragraph 11 of the agreement reads: "This instrument contains the entire agreement between the parties hereto with respect to the transactions contemplated herein." Additionally, Mr. Henry Ogle, attorney for plaintiffs during the negotiations, when asked if the contract represented the entire agreement of the parties, replied that it did.