IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2010 Session

## IN RE: LANDON A. F.

**Appeal from the Juvenile Court for Bedford County**
**No. 31-566     Charles L. Rich, Judge**

**No. M2010-01180-COA-R3-JV - Filed April 26, 2011**

The mother of a nine year old boy filed a Rule 60 motion to vacate an "agreed order" that granted extensive visitation rights to the boy's father. The order in question was signed by the father's attorney and was presented to the trial judge without the mother's signature and without the mother being present. Earlier, the mother had refused to sign the order, claiming that its terms deviated significantly from the agreement the parties actually reached. The trial court signed the document and subsequently denied the mother's Rule 60 motion. We reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Jodi Ellen Melind, Brentwood, Tennessee, for the appellant, Cassie Jo Fox.

Richard L. Dugger, Shelbyville, Tennessee, for the appellee, Nick H. Ford.

## OPINION

### I. A DISPUTE OVER VISITATION

The child at the center of this case, Landon A.F. was born out of wedlock on July 12, 2001 to Cassie Jo Fox ("Mother"). Nick H. Ford ("Father") was named as the child's father on the birth certificate. The record also contains a Voluntary Acknowledgment of Paternity, executed by Father September 17, 2003, and an Order of Legitimation, which was filed on March 30, 2005. Landon resided at Mother's home, and Father began exercising visitation when the child was still quite young.

The question of visitation was a point of contention between the parties from early on. The pleading of earliest date in the appellate record is a petition for contempt, or in the alternative for custody, filed by Father in the Juvenile Court of Bedford County on September 28, 2004. That petition recites that a still earlier Order of Protection, entered on or about July 23, 2003, included a "Visitation Schedule for the Minor Child."[1] After a hearing on Father's petition, the trial court entered a pendente lite order, awarding him "custody of the minor child" every other weekend, and on alternating Tuesdays from 6:30 p.m. until 9:00 a.m. on Wednesday mornings. Father was also ordered to pay child support of $274 per month through wage assignment.

The events that led directly to this appeal arose from a petition filed by Father on August 20, 2009. In that petition Father asked the trial court to establish paternity of Landon (notwithstanding the prior orders to that effect) and for a change of custody. Father's petition was scheduled to be heard on December 13, 2009. Mother was served at her last known address,[2] and she appeared *pro se* on the day of the hearing.[3] Father was represented by counsel. The parties both acknowledge that they reached agreement on the issues dividing them after discussions in the hallway of the courthouse before their case was called.

When the hearing began, Father's attorney announced to the court that the parties had reached agreement. Father's attorney alleges that he also explained the terms of the agreement to the court. Mother later denied by affidavit that any terms were announced to the court. In any case, the court told Father's counsel to prepare an order reflecting the parties' agreement. Counsel drafted the order, which he showed to Mother in his office two or three days later. Mother refused to sign it, however, stating that its terms were not the same as she had agreed to. Among other things, she objected to the absence in the document of any reference to payment by Father of back child support, which she alleged had been part of their verbal agreement.

Over four months later, Father's counsel submitted a document to the trial court for its approval. The document had been titled "Motion to Enter an Agreed Order." It was in the form of an order, however, rather than in the form of a motion, and the first four words of the title had been scratched through. The document stated that the terms of a Joint Residential Parenting Plan had been announced in open court, and it recited terms which

---

[1] Father's petition for contempt states that the Order of Protection is "attached hereto, and incorporated herein as "Exhibit A." However, Exhibit A is not a part of the appellate record.

[2] The record does not indicate service of the Petition on Mother, but only service of the Motion to Set.

[3] Mother testified by affidavit that the date of the hearing was actually December 14, 2009.

included highly detailed provisions as to the transfer of the child between Mother and Father during the Christmas holidays, and a schedule that divided parenting time equally between the parties after school resumed.

The Certificate of Service at the bottom of the document stated that "a true and correct copy of the forgoing motion has been sent to the Respondent Cassie Fletcher at her last known address . . ." The address that followed, however, was not the address that had been successfully used to accomplish service on Mother prior to the hearing of December 13, 2009, but rather Father's current address. Mother testified by affidavit that she was not informed of the court date, and that she was not present in court when the document was submitted. Despite Mother's absence, however, the trial judge signed the document, and it was entered on April 19, 2010 without her signature.

Several days later, Father called Mother and told her that the trial court had entered an agreed order granting him joint custody of Landon. Mother then retained an attorney, who filed a motion on May 3, 2010 to set aside or vacate the order, pursuant to Tenn. Code Ann. § 37-1-139 and Tenn. R. Civ. P. 60.02. Mother's motion was accompanied by her affidavit, which recited many of the facts set out above, and by a memorandum of law. The trial court heard argument on Mother's motion on May 10, 2010. Shortly thereafter, it entered a very brief order denying the motion. This appeal followed.

## II. ANALYSIS

### A. The Requirements for an Agreed Order

The issue of the validity of an agreed order or a consent decree is a question of law. Our review on appeal is therefore *de novo* without a presumption of correctness as to the trial court's decision. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993). There were no findings of fact in this case, so there is no occasion to apply the familiar standard of review for such findings, which presumes that they are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

We note at the outset that our judicial system favors resolution of disputes by agreement between the parties. *Harbour v. Brown for Ulrich,* 732 S.W.2d 598, 599 (Tenn. 1987); *Kelly v. Walker*, 346 S.W.2d 253, 255 (Tenn. 1961); *Kittrelle v. Philsar Development Co.*, 359 S.W.2d 837, 844 (Tenn. Ct. App. 1962). "Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the

achievement of an amicable result to pending litigation." *City of New Johnsonville v. Handley,* M2003-00549-COA-R3-CV, 2005 WL 1981810 at \*10 (Tenn. Ct. App. Aug. 16, 2005) (Rule 11 permission to appeal denied Feb. 6, 2006) (citing *In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 WL 1961805 at \*12 (Tenn. Ct. App. Apr. 28, 2003) (Rule 11 permission to appeal denied Oct. 6, 2003)).

Our courts often use the terms "Agreed Order," "Consent Decree," and Consent Judgment" interchangeably. *Gardiner v. Word,* 731 S.W.2d 889, 893 (Tenn. 1987); *Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007); *State v. R.S.*, M2002-00919-COA-R3-CV, 2003 WL 22098035 at\*5 (Tenn. Ct. App. Sept. 11, 2003) (no Tenn. R. App. P. 11 application filed); *Curbow v. Stucki,* M2001-02908-COA-R3-JV, 2003 WL 22455397 (Tenn. Ct. App. Oct. 28, 2003) (no Tenn. R. App. P. 11 application filed). All refer to an agreement voluntarily entered into by litigants, which becomes enforceable after it is ratified by the court. "A consent decree is a contract made final and binding upon the parties by the approval of the court." *City of Shelbyville v. State ex rel. Bedford County,* 415 S.W.2d 139, 144 (Tenn. 1967); *Clinchfield Stone Co. v. Stone*, 254 S.W.2d 8, 13 (Tenn. Ct. App. 1952).

The entry of an agreed order or a consent decree by the trial court is not the same as an adjudication on the merits of the claims of the parties. "A consent judgment does not reflect the judgment of the court, but is merely an agreement between the parties to a lawsuit which has been placed into the record by the court." *In re Estate of Jones*, 154 S.W.3d 582, 585 (Tenn. Ct. App. 2004) (citing *Harbour v. Brown*, 732 S.W.2d at 599).

Agreement by the parties is obviously essential, for "[a] consent judgment is entirely dependent upon consent by all parties to all provisions thereof." *Curbow v. Stucki*, 2003 WL 22455397 at \*4. In *Harbour v. Brown,* our Supreme Court held that the trial court lacked the power to enter a judgment by consent when it became aware before entering the judgment that the defendant has repudiated the agreement it had previously assented to. *Harbour*, 732 S.W.2d at 599. "A valid consent judgment cannot be rendered by a court when the consent of one of the parties is wanting at the time the agreement becomes the judgment of the court." 46 AM.JUR.2D, *Judgments* § 211.

In the present case, it is undisputed that Mother refused to sign the order that was presented to her in the office of Father's attorney, allegedly because it did not fully or accurately reflect the terms that she had agreed to in the hallway of the courthouse on December 13, 2009. Although the trial court may have been unaware of the circumstances behind Mother's refusal, the absence of her signature on the "agreed order" should have alerted the court that the necessary consent was lacking.

If Mother had been in court when the document was presented, she could have been questioned directly about the reason for the missing signature. She was never properly served with notice of that hearing, however, and thus did not have the opportunity to make her objections known. Notice and an opportunity to be heard are two essential components of due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 787 (Tenn. 1999).

There is a limited exception to the general rule set out in *Harbour v. Brown,* which we discussed in *Environmental Abatement v. Astrum R.E.*, 27 S.W.3d 530 (Tenn. Ct. App. 2000). That exception prevents a party, under certain circumstances, from withdrawing his or her consent to an oral agreement reached prior to the entry of a judgment based upon that agreement. The exception is analogous to the normal practice of binding parties by representations they make in formal judicial proceedings, and is rooted in language found in *Harbour v. Brown*: "[t]he power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement received the sanction of the court or is rendered and promulgated as a judgment." *Environmental Abatement*, 27 S.W.3d at 538 (citing *Harbour v. Brown,* 732 S.W.2d at 599).

We observed that "the time the agreement received the sanction of the court" is not necessarily synonymous with the time it "is rendered or promulgated as a judgment," but may be an alternative to it. We therefore held that the court's sanction could be obtained during judicial proceedings prior to the formal entry of judgment if certain requirements are met. "At the least, this exception applies to agreements made in open court, on the record, where the detailed terms of the agreement are presented to the court, accepted by the court, and preserved by transcript or other acceptable record of the court proceedings." *Environmental Abatement*, 27 S.W.3d at 539.

Father argues that the terms of the hallway agreement were announced in open court, and that Mother assented to them at that time. Mother denies that the terms of the agreement were presented to the court. Father also contends that Mother's subsequent refusal to sign the "agreed order" was part of a long-standing pattern by which she reached agreements with Father again and again, only to repudiate them shortly thereafter. Unfortunately for Father, however, no recording was made of the relevant hearing, and no court reporter was present, so if the detailed terms of the agreement were indeed presented to the court, their content was not preserved.

Father urges us to hold, however, that once the "agreed order" was ratified by the trial court's signature, its declaration that the terms of the Joint Residential Parenting Plan had been announced in open court, and that Mother had assented to those terms, cured any procedural defects in the order. We find this argument to be without merit. One reason for

the requirement that the detailed terms of the agreement not only be announced to the court but also be preserved by transcript or otherwise is that it is unrealistic to expect a busy trial judge to remember the exact terms of a detailed visitation plan that was announced in his court four months earlier. Thus, the record lacks any reliable proof of mutual consent at the time the order was entered, which is an essential and necessary component of any valid agreed order.[4]

## B. The Motion to Set Aside or Vacate the Agreed Order

Mother's attorney filed a motion on May 3, 2010 to set aside or vacate the agreed order that had been entered fewer than thirty days earlier. The motion cited Tenn. Code Ann. § 37-1-139(a), which gives the juvenile court the authority to set aside any of its orders if it appears that "[i]t was obtained by fraud or mistake sufficient to satisfy the legal requirements of any other civil action." The motion also cited Tenn. R. Civ. P. 60.02, which allows the court to relieve a party from a final judgment on a number of possible grounds, including mistake, inadvertence, surprise, excusable neglect, fraud or misrepresentation, or if the judgment is void. The trial court denied the motion without explanation. Its order simply read, "[t]he parties appeared before the Court on May 10, 2010, on Respondent's Motion to Vacate or Set Aside Agreed Order. The Court denied motion."

If the trial court believed there was reason to vacate its order, it had ample authority to do so, whether in reliance upon the Tenn. Code Ann. § 37-1-139(a), the Rules of Juvenile Procedure, or the Rules of Civil Procedure.[5] It appears to us, however, that since Tenn. R.

---

[4]Tenn. R. Civ. P. 58 provides that "[e]ntry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:

(1) the signatures of the judge and all parties or counsel, or
(2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
(3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel."

In this case, the failure to properly serve Mother would have been fatal to the validity of the order, regardless of any other deficiencies in it.

[5]Rule 1(b) of the Rules of Juvenile Procedure sets out the scope of those rules and declares that the Tennessee Rules of Civil Procedure shall govern all cases involving child custody. Rule 34(b) of the Rules of Juvenile Procedure echoes the language of Tenn. Code Ann. § 37-1-139(a): "An order of the court shall be vacated if it appears that it was obtained by fraud or mistake sufficient thereof in a civil action, or the
(continued...)

Civ. P. 60 applies only to orders that have become final for purposes of appeal, and Mother's motion was filed less than thirty days after the entry of the "agreed order" of April 19, 2010, that order had not yet become final for the purposes of Tenn. R. Civ. P. 60. We will therefore treat Mother's motion as one under Tenn. R. Civ. P. 59.04 to alter or amend a judgment.

Review of a motion under Tenn. R. Civ. P. 59.04 "allows the trial court to correct any errors as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters." *Vaccarella v. Vaccarella,* 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001)(*citing Chadwell v. Knox County*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998)). A court's decision on a motion to alter or amend will be upheld on appeal unless the court has abused its discretion. *Stovall v. Clarke,* 113 S.W.3d 715, 721 (Tenn. 2003); *Williams v. Williams*, 286 S.W.3d 290, 295 (Tenn. Ct. App. 2008); *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).

In this case, the trial court entered an "agreed order" that lacked the signature of a party whose consent was necessary for the court to exercise its authority to enter such an order. That party did not receive proper notice of the hearing at which the "agreed order" was presented to the court, and thus was prevented from voicing her objections to it. Although both parties acknowledged that they had reached an agreement out of court and that the fact of their agreement was announced to the court, no record of the exact terms of that agreement was preserved.

Once these defects in the entry of the "agreed order" were brought to the attention of the court, it was incumbent upon the trial court to follow the legal standards regarding entry of agreed orders. Because the trial court did not apply the correct legal standard, it did not exercise its discretion appropriately.

Accordingly, we reverse the trial court's denial of Mother's motion to alter or amend. We also vacate the agreed order entered herein because there was no agreement at the time of its entry.

### III. ATTORNEY FEES

Mother has also asked this court to award her the attorney fees she incurred at trial and on appeal. Tenn. Code Ann. § 36-5-103(c) gives a court the discretion to award attorney fees

---

[5](...continued)
court lacked jurisdiction over a necessary party or of the subject matter, or newly discovered evidence so requires."

to the prevailing party, ". . . in regard to any suit or action concerning the adjudication of custody or the change of custody of any child, or children of the parties . . ." *See also, Holt v. Holt,* 995 S.W.2d 68, 78 (Tenn. 1999); *Shofner v. Stewart*, 232 S.W.3d 36, 41 (Tenn. Ct. App. 2007); *Archer v. Archer,* 907 S.W.2d 412, 419 (Tenn. Ct. App.1995).

In determining whether an award for attorney's fees is warranted, this court has stated that "we should consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). There is no evidence in the record as to either party's financial means, but Father's attorney stated at oral argument that neither party is particularly well-off. Thus, payment of attorney fees is likely to be a hardship for either one.

Since Mother was the prevailing party, however, and since there was no evidence that she was acting in bad faith, it seems appropriate for Father to bear the greater financial burden. We accordingly remand this case to the trial court for a determination of Mother's reasonable and necessary attorney fees on appeal and for an order compelling Father to pay those fees.

## IV.

The "agreed order" is vacated, and the trial court's previous order of visitation is reinstated. We remand this case to the Juvenile Court of Bedford County for further proceedings, including the award of reasonable and necessary attorney fees incurred on appeal to Mother. Tax the costs on appeal to the appellee, Nick H. Ford.

_____
PATRICIA J. COTTRELL, JUDGE